COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


KEITH DEAN LAWSON
                                          OPINION BY
v.    Record No. 1100-00-3          JUDGE G. STEVEN AGEE
                                          JUNE 19, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                      Charles J. Strauss, Judge

            Mark T. Williams (Williams, Morrison, Light &
            Moreau, on brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     On December 20, 1999, a Pittsylvania County grand jury

indicted the appellant, Keith Dean Lawson (Lawson), for

involuntary manslaughter, reckless use of a firearm and trespass

by a hunter.  After a bench trial in the Pittsylvania County

Circuit Court on March 22, 2000, Lawson was convicted of all

three charges.  On May 2, 2000, Lawson was sentenced to serve

seven years incarceration for involuntary manslaughter, twelve

months incarceration for the reckless use of a firearm and to

pay a fine of $500 for the trespass conviction.  He now appeals,

challenging the sufficiency of the evidence for the trespass and

involuntary manslaughter convictions.  In addition, he contends

certain evidence was improperly admitted at his sentencing

hearing.  For the following reasons, we affirm in part and reverse in part.

## BACKGROUND

Shortly after noon on October 30, 1998, Sergeant William T. Baggerly, of the Pittsylvania County Sheriff's Office, received a dispatch message to go to the property of Kenneth Dalton. When he arrived, the Life Saving Crew directed him to the interior of the property where timber had been cut over but now contained chest high saplings.  Sergeant Baggerly found the body of Kevin Dalton (Dalton) lying on his back, legs draped over a log as if he had been sitting on it, with a turkey call striker in one hand and his black and white dog lying at his feet; both Dalton and the dog were dead. The bodies were close to an area of standing timber, approximately 200 yards onto the Dalton property from the edge of the adjoining Rowland property. Dalton was dressed in camouflage but was not wearing blaze orange, nor were any blaze orange articles nearby.  The autopsy showed that Dalton had been killed by double aught buckshot pellet wounds to his back that perforated his spinal column and spine, both lungs, and his aorta.

Lawson, an experienced hunter, was at the scene and told Sergeant Baggerly that he "and a friend were turkey hunting and that he was coming out of the woods when he saw some turkey scratches.  He then heard a turkey call and saw and heard some movement, and he fired at the movement" with his twelve-gauge

shotgun loaded with 00 shot. At no time did Lawson say he saw a turkey. Lawson showed Sergeant Baggerly the spot from which he shot and said he did not know his friend's whereabouts when he fired.

Lieutenant Carl Martin of the Department of Game and Inland Fisheries examined the area where the shooting occurred and noted that, from the position where Lawson said he was standing when he fired, one could only see the end of the log on which the victim was seated, but not the entire log.

Later that day, in a taped statement to Lieutenant Martin, Lawson explained that he had been hunting, with permission, on the adjacent Rowland property. Lawson said he shot once and thought he was shooting at a turkey. "Nothing never moved. I walked over and it was a man lying there . . . . " Lawson said his victim was between fifty and sixty yards from him when he fired his shotgun.

At trial, the Commonwealth presented hunting experts who explained that hunting rules stress the importance of identifying the target before shooting. This rule of identifying the target is stressed because the hunter often is required to determine the sex of the animal before he can legally take it, "[s]o you have to be fully able to identify it, and where the bullet's going to stop." In addition, the experts testified about the universal standard for targeting, pointing and shooting in a hunting situation:

> [T]he state manual says you do not shoot at
> sounds. You do not shoot at color. You do
> not shoot before you have absolutely made
> certain that your target is what you are
> shooting at, and that the background is such
> that if you miss you're not going to do
> other damage.

The experts, when asked how much of a turkey a hunter should see before he fires, answered, "All of it."

Morgan Rowland testified that he owned "about 60 acres" of property that adjoined the Dalton property. He testified that he had given Lawson and a friend permission to hunt on his land. He told them that the land "where the trees had been cut over" belonged to Dalton, but he did not specifically point out the limits of his property. He further testified that there is "no actual fence or dividing line between" the properties and referred to an old spring as the limit of his property. There were several old springs, however, in the general area.

Lawson testified in his own defense and told the court that he had hunted deer and turkey for fifteen years. Although he had not taken a hunter safety course, "[b]ecause I'm not required to," he agreed with the rules of "identifying a target, making sure you know what it is before shooting." He also explained that he knew not to point a gun at something he did not intend to shoot and not shoot at something he could not clearly see.

Lawson explained his actions surrounding the shooting. He, not wearing blaze orange, had spent the morning sitting on a log

looking and waiting for a turkey while his friend had gone elsewhere to hunt.  At midday, Lawson was returning toward his truck to meet his friend for lunch when he saw on his path that the leaves had been disturbed.  He interpreted the vegetation disturbance as "turkey scratch feeding."  He then heard what he thought was a turkey yelping and started "trying to make a visual."  He saw "something black . . . the black object [that was] kind of bobbing up and down."  "It looked exactly like a turkey . . . [b]ecause of the way it was going up and down, doing that number right there like it was scratching at the time and feeding."  "I looked really good and I, I knew this was a turkey, and I didn't see nothing around the turkey at all, so I put the gun up, I waited a second, I looked at it, and then I pulled one shot."  He got ready to shoot again but nothing moved.  Then he ran down the hill and found Dalton and his dog, both dead.  Lawson immediately went for help.

Lawson, on cross-examination, agreed that he had not told Lieutenant Martin that he had seen the black object looking exactly like a turkey "bobbing up and down," but claimed that "this is all I've been able to think about for five months, so I've been able to go over it plenty by myself."  He also admitted that he told Martin that he did not see any colors or anything to indicate that what he saw was actually a turkey, but insisted that "before I pulled the trigger I saw a black object moving up and down like it was feeding.  I watched it."

However, he also agreed that he answered, "Yes sir," when Lieutenant Martin asked him to confirm that, although he saw movement and heard the sounds he believed to be a turkey, he did not identify it as a turkey before he shot.

While Lawson objected throughout the trial to the sufficiency of the evidence, his motions to strike were overruled, and the trial court found Lawson guilty of all three charges.

At the sentencing hearing, a pre-sentence report was presented which contained Lawson's prior criminal convictions, including five game law violations (hunting deer without a license, etc.) from a November, 1996 incident. No objection was made to the pre-sentence report. The Commonwealth also elicited testimony from Lieutenant Martin and Sergeant Baggerly about another charge brought against Lawson that arose out of the November, 1996 incident: shooting into an occupied dwelling. Lawson objected to that testimony on the ground that he had been acquitted of the charge. The Commonwealth argued that he was not acquitted, but that there had been a preliminary hearing and the charge had not been certified. The Commonwealth said the evidence was to show Lawson's "prior acts." Over objection, the trial court allowed the testimony. Lawson then objected, arguing that nothing relating to this prior incident had been provided in discovery and that while this was a sentencing hearing he was entitled to notice of prior bad acts by virtue of

his pretrial discovery motions and the trial court's discovery order. The trial court overruled the objection.

ANALYSIS

I.  Trespass By Hunter

The trial court found Lawson guilty of criminal trespass by a hunter, in violation of Code § 18.2-132. The trial court held that the offense was "malum prohibitum" and therefore, the Commonwealth was not required to prove as an element of the crime that Lawson willfully intended to trespass upon the Dalton property. On appeal, Lawson argues the trial court erred in this finding and that the evidence was insufficient to convict him. The Commonwealth conceded this point on brief and in oral argument. We agree.

Code § 18.2-132 reads, "Any person who goes on the lands, waters, ponds, boats or blinds of another to hunt, fish or trap without the consent of the landowner or his agent shall be deemed guilty of a Class 3 misdemeanor." The section is silent as to the element of intent. Whether willful intent is a necessary element of criminal trespass under Code § 18.2-132 is a question of first impression in the Commonwealth, but is directly answered by a review of the law on criminal trespass generally:

> On its face, the criminal trespass statute
> appears strikingly similar to common law
> civil trespass. As a penal statute,
> however, the Virginia criminal trespass
> statute has been uniformly construed to

> require a willful trespass . . . .
> "Criminal intent is an essential element of
> the statutory offense of trespass, even
> though the statute is silent as to intent
> . . . . "

Reed v. Commonwealth, 6 Va. App. 65, 70-71, 366 S.E.2d 274, 278 (1988) (citations omitted).  Accord Wise v. Commonwealth, 98 Va. 837, 36 S.E. 479 (1900); Campbell v. Commonwealth, 41 Va. (2 Rob.) 791 (1843); O'Banion v. Commonwealth, 33 Va. App. 47, 531 S.E.2d 59 (2000).  If the general criminal trespass statute requires proof of willful intent, that which specifically applies to hunters does as well.

Lawson's unrebutted evidence was that he had permission to be on the adjoining Rowland property and, at the time of the shooting, he mistakenly thought he was on the Rowland property. Therefore, Lawson entered upon the Dalton property under a bona fide claim of right and cannot be convicted of trespass because his uncontested claim of right defense negates any criminal intent.  See Reed, 6 Va. App. at 71, 366 S.E.2d at 278.  We, therefore, reverse and dismiss Lawson's trespass by a hunter conviction.

## II. Involuntary Manslaughter

Lawson also claims the trial court erred in finding the evidence sufficient to convict him of involuntary manslaughter. When the sufficiency of the evidence is challenged on appeal, we must consider the record in the light most favorable to the Commonwealth, giving the Commonwealth's evidence all reasonable

inferences deducible therefrom.  DeAmicis v. Commonwealth, 31

Va. App. 437, 440, 524 S.E.2d 151, 152 (2000).  The judgment of

the trial court may not be disturbed unless it is plainly wrong

or lacks supporting evidence.  See id.  We will not substitute

our judgment for that of the trier of fact.  See Cable v.

Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).

In Cable, a hunting homicide case, the Supreme Court of

Virginia set out the elements of involuntary manslaughter:

> Involuntary manslaughter is defined as the
> accidental killing of a person, contrary to
> the intention of the parties, during the
> prosecution of an unlawful, but not
> felonious, act, or during the improper
> performance of some lawful act.  The
> "improper" performance of the lawful act, to
> constitute involuntary manslaughter, must
> amount to an unlawful commission of such
> lawful act, not merely a negligent
> performance.  The negligence must be
> criminal negligence.  The accidental killing
> must be the proximate result of a lawful act
> performed in a manner "so gross, wanton, and
> culpable as to show a reckless disregard of
> human life."

243 Va. at 240, 415 S.E.2d at 220 (internal citations omitted).

The Court then described "gross negligence" as follows:

> [T]he term "gross, wanton, and culpable"
> describes conduct.  The word "gross" means
> "aggravated or increased negligence" while
> the word "culpable" means "deserving of
> blame or censure."  "'Gross negligence' is
> culpable or criminal when accompanied by
> acts of commission or omission of a wanton
> or willful nature, showing a reckless or
> indifferent disregard of the rights of
> others, under circumstances reasonably
> calculated to produce injury, or which make
> it not improbable that injury will be

occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts."

Id.

Lawson contends that his actions amounted to mere simple negligence and not culpable gross negligence or criminal negligence. He argues his mistaken identification of a turkey was not grossly wanton considering the turkey scratch marks in the vegetation, the realistic turkey sounds, and the fact that the victim was quietly sitting down and not wearing blaze orange. Lawson further argues that because he had no reason to believe anyone else was in the immediate area, it was not unreasonable for him to believe that the low-lying, bobbing black object was a turkey. We, however, hold there was sufficient evidence presented to support the trial court's finding of guilt.

The evidence shows that Lawson gave a statement to Sergeant Baggerly and then a recorded statement to Lieutenant Martin where he denied actually seeing a turkey. He only assumed the object of his gunfire was a turkey.

> LT. MARTIN: O.K. Alright, now, did you ever see anything or just hear something?
>
> LAWSON: Uh, all I heard, I heard it yelping and I seen some movement behind a bush. I heard it yelping and I seen some movement behind a bush.
>
> LT. MARTIN: But did you see any colors or anything to indicate that . . . [maybe], it was a turkey?

LAWSON:  No.

LT. MARTIN:  You never saw anything?

LAWSON:  No.  I seen a black something move and I said well that's a turkey, you know, 'cause he's still (defendant makes turkey sound) doing like that.  And I shot it and I walked over there and it was none.

LT. MARTIN:  Alright, so you saw, you saw movement but you didn't identify it as a turkey.  You just saw something moving and you heard the sounds and in your mind you thought it was a turkey.

LAWSON:  Yes sir.

Sergeant Baggerly's testimony as to Lawson's statement was nearly identical:

He heard something and he saw something move, and he fired at it . . . I asked him if he had ever saw a turkey and he said no.

This case, therefore, is not one of mistaken identity because Lawson never properly identified the object as a turkey. An assumption does not amount to proper identification.  See Gooden v. Commonwealth, 226 Va. 565, 311 S.E.2d 780 (1984). Lawson's trial testimony was the first time he mentioned a claim of mistaken identity (a "bobbing black object") as opposed to his statement at the scene of shooting at movement.  The trial court could have reasonably perceived Lawson's testimony as self-serving because Lawson testified that he did not see the log, a foot in diameter, that was exactly where he fired and would have obscured anything next to it.  See Marable v. Commonwealth, 27 Va. App. 505, 509-510, 500 S.E.2d 233, 235

(1998).  Even if Lawson saw a bobbing black object, he disregarded a mandatory hunting rule which he acknowledged:  the hunter must clearly see and identify his target and what is beyond.  Instead, Lawson aimed his shotgun into thick cover and fired at sound and movement.

This case is very similar to Cable, where the defendant heard a squirrel barking off to his right.  Cable started walking towards the sound of the squirrel, thought to be twenty yards away.  He approached "a big old tree" by a ravine.  At the edge of the ravine, Cable stopped, not wanting to proceed through the thick foliage.  He heard something like a squirrel jumping, whereupon he turned, aimed his gun, and when he saw a flash of movement, black in color, he shot at the movement.  The shot fatally wounded Cable's hunting partner, dressed in camouflage, whom Cable believed to be elsewhere.  The Supreme Court held Cable's actions, in failing to identify his target which resulted in the killing of another hunter, amounted to involuntary manslaughter.  243 Va. at 241, 415 S.E.2d at 221.

For Lawson to argue that it was reasonable for him to assume something that low to the ground was an animal and not another hunter is not credible.  Lawson knew his friend was on the property hunting for turkey; in fact, his first thought when he realized he had shot another hunter was that the victim was his friend.  Moreover, Lawson had just spent his morning sitting

on a log, in camouflage, waiting to spot a turkey, just as Dalton was doing when he was killed.

Lawson, as a hunter, had a duty to properly identify his target and everything in the area prior to firing his firearm. Id. He failed in this duty, and it cost another hunter his life. While he did not intend to kill Dalton, his firing into thick brush without ascertaining if the dark object was actually a turkey, in an area where he knew at least one other hunter was present, evidenced a wanton and culpable disregard for human life amounting to criminal negligence.

We hold that the trial court properly found the evidence sufficient to convict Lawson of involuntary manslaughter.

### III.  Discovery at Sentencing

Finally, Lawson challenges the admission of the testimony regarding part of a 1996 incident that the Commonwealth presented at his sentencing hearing. Lawson challenges the admission of the evidence given by Sergeant Baggerly and Lieutenant Martin regarding that part of the 1996 incident for which Lawson was not convicted:  shooting into an occupied dwelling. At trial, the Commonwealth argued this testimony was direct evidence of Lawson's prior acts and was presented in rebuttal of Lawson's sentencing evidence. Lawson did not and does not challenge the admission of the other hunting-related charges for which he was convicted that arose out of the same

incident and were reflected in the pre-sentence report.  Lawson

alleges the information on the occupied dwelling shooting should

have been, but was not, provided to him under Rule 3A:11

pursuant to the pretrial discovery order and, thus, it was error

for the trial court to admit that evidence.  The Commonwealth

claims, among other arguments, that Rule 3A:11 does not apply to

sentencing in any respect.

There is no general constitutional right to discovery in a

criminal case.  Weatherford v. Bursey, 429 U.S. 545 (1977);

Spencer v. Commonwealth, 238 Va. 295, 384 S.E.2d 785 (1989);

Moreno v. Commonwealth, 10 Va. App. 408, 392 S.E.2d 836 (1990).

The Commonwealth, however, has granted accused individuals

limited discovery rights which are provided in the Rules of

Court and the Code.[1]  These provisions clearly apply only to

---

[1]     Rule 3A:11.  Discovery and Inspection.  [(in
        pertinent part)]

            (a) Application of Rule. - This Rule
        applies only to prosecution for a  felony in
        a circuit court.
            (b) Discovery by the Accused. - (1)
        Upon written motion of an accused a court
        shall order the Commonwealth's attorney to
        permit the accused to inspect and copy or
        photograph any relevant (i) written or
        recorded statements or confessions made by
        the accused, or copies thereof, or the
        substance of any oral statements or
        confessions made by the accused to any law
        enforcement officer, the existence of which
        is known to the attorney for the
        Commonwealth, and (ii) written reports of
        autopsies, ballistic tests, fingerprint
        analyses, handwriting analyses, blood, urine

and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused or the alleged victim made in connection with the particular case, or copies thereof, that are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth.

(2) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case, except as provided in clause (ii) of subparagraph (b)(1) of this Rule.

[Code] § 19.2-265.4. Failure to provide discovery.

A. In any criminal prosecution for a felony in a circuit court or for a misdemeanor brought on direct indictment, the attorney for the Commonwealth shall have a duty to adequately and fully provide discovery as provided under Rule 3A:11 of the Rules of the Supreme Court. Rule 3A:11 shall be construed to apply to such felony and misdemeanor prosecutions. This duty to disclose shall be continuing and shall apply to any additional evidence or material discovered by the Commonwealth prior to or during trial which is subject to discovery or inspection and has been previously requested by the accused.

felony prosecutions.  Lawson contends these provisions and his pretrial discovery order required the Commonwealth to provide him with the evidence pertaining to all his actions in 1996.

Under Rule 3A:11, the Commonwealth is required to provide evidence to the defendant only where the defendant requests such evidence, <u>and</u> the trial court orders the discovery of the requested evidence.  In this case, Lawson made a pretrial motion for discovery, requesting information regarding "any criminal offenses or acts of misconduct other than those charged in the present indictment . . . which the Commonwealth will attempt to prove at the trial against the Defendant" and "all information concerning the Defendant's prior criminal record, including but not limited to felony and moral turpitude misdemeanor convictions."  Lawson, however, failed to make the discovery order entered by the trial court a part of the record for this appeal.  <u>Smith v. Commonwealth</u>, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (the appellant has the burden on appeal to provide a complete record which will enable this Court to fully review a

---

B.  If at any time during the course of the proceedings it is brought to the attention of the court that the attorney for the Commonwealth has failed to comply with this section, the court may order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances.

claim of error).  We have, therefore, no basis upon which to conclude that the trial court granted Lawson's motion for discovery or, if it did grant the motion, to determine what information it may have ordered the Commonwealth to provide Lawson.  Accordingly, we find the trial court did not err in admitting the testimony of Sergeant Baggerly and Lieutenant Martin.  Smith, 16 Va. App. at 635, 432 S.E.2d at 6 (where the appellant fails to provide a sufficient record, the judgment will be affirmed).

Lawson also argues that even if the laws of the Commonwealth do not specifically provide for a right of discovery at sentencing, due process requires that he be given an opportunity by notice of the allegations and the intended use of such at his sentencing hearing.  Again, we disagree.  The due process rule of fairness is that exculpatory evidence must be disclosed upon request.  See Brady v. Maryland, 373 U.S. 83 (1963); Goins v. Commonwealth, 251 Va. 442, 470 S.E.2d 114 (1996); Lowe v. Commonwealth, 218 Va. 670, 239 S.E.2d 112 (1977).  In this matter, the non-disclosed evidence was in no way exculpatory, but, in fact, was inculpatory.

We, therefore, affirm the admission at the sentencing hearing of the evidence pertaining to the 1996 incident.

The convictions for involuntary manslaughter and reckless handling of a firearm are affirmed.  The conviction for criminal trespass by a hunter is reversed and dismissed.

<u>Affirmed, in part,</u>
<u>reversed and dismissed,</u>
<u>in part.</u>