COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Senior Judge Coleman and Retired Judge Smith[*]
Argued at Salem, Virginia


MICHAEL WAYNE VANCE

                                                    MEMORANDUM OPINION[**] BY
v.       Record No. 1646-07-3          CHIEF JUDGE WALTER S. FELTON, JR.
                                                         NOVEMBER 18, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Michael L. Moore, Judge

        C. Eugene Compton (Compton & Compton, P.C., on brief), for
        appellant.

        Gregory Franklin, Assistant Attorney General (Robert F. McDonnell,
        Attorney General; Craig W. Stallard, Assistant Attorney General, on
        brief), for appellee.


        Following a bench trial, Michael Wayne Vance ("appellant") was convicted of involuntary

manslaughter in violation of Code § 18.2-36.  On appeal, appellant contends the evidence failed to

prove he acted in a criminally negligent manner when he unintentionally killed a camouflaged

hunter while shooting at what he incorrectly thought to be a turkey at a time he knew turkey hunting

was prohibited.  For the reasons that follow, we affirm the judgment of the trial court.

                                              I.

        When on appeal an appellant challenges "the sufficiency of the evidence to sustain his

conviction[], it is the appellate court's duty to examine the evidence that tends to support the

_____

        [*] Retired Judge Charles H. Smith, Jr., took part in the consideration of this case by
designation pursuant to Code § 17.1-400(D).

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

conviction[] and to permit the conviction[] to stand unless [it is] plainly wrong or without evidentiary support." Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).

So viewed, the evidence proved that in the late afternoon hours of November 11, 2003, appellant entered a parcel of private property to hunt deer. The property owner had previously given appellant and at least one other person oral permission to hunt on the property, which was not posted with signs prohibiting trespassing.

On that date, the "bow and arrow" and muzzleloading weapon season for deer hunting was open,[1] but turkey hunting season was closed.[2] Appellant, who had thirty years of experience hunting, hunted that day with a muzzleloaded .50 caliber rifle, loaded with a .45 caliber bullet encased in a sabot.[3] His muzzleloaded rifle, when fired, projected a bullet in excess of 2,000 feet per second.

When appellant, wearing camouflage, approached a heavily wooded ridge on the property in the late afternoon hours of November 11, he heard what he incorrectly believed to be a turkey. He told investigators that he "slipped down [in the direction of the sound]," and "eased to [a] tree" against which he could "rest" or stabilize his rifle to improve his aim. He "saw a flash" of movement 18 feet above the ground in a tree some 187 feet away from him that he "swore [] was

---

[1] A muzzleloading weapon is "a single shot weapon . . . , excluding muzzleloading pistols, .45 caliber or larger, firing a single projectile or sabot (with a .38 caliber or larger projectile) of the same caliber loaded from the muzzle of the weapon and propelled by at least 50 grains of black powder (or black powder equivalent)." 4 VAC 15-90-80(G).

[2] Code § 29.1-550 provides, in pertinent part, "[i]t shall be unlawful for any person to . . . take, or attempt to take, any wild bird . . . during the closed season" and that "[a]ny person convicted of violating any provisions of this section shall be guilty of a Class 2 misdemeanor."

[3] A sabot is "a thrust-transmitting light-weight carrier that positions a missile or sub-caliber projectile in a tube . . . ." Webster's Third New International Dictionary 1995 (1993).

turkey wings." [4] Appellant told police that he "[t]hen [] saw the head move and [he] shot." After appellant fired, he reloaded his rifle. He then "got to looking and [] [saw] boot toes." Appellant immediately "turned and ran," without "even go[ing] to see if [the person in the tree] was hurt or [if] [he] could help him . . . ."

When appellant ran from the scene he returned to his house, approximately a quarter of a mile from where he shot. He did not call anyone to report what had happened or what he saw in the tree. Instead, he left his .50 caliber muzzleloader at his house and headed back up the ridge with a .22 caliber rifle and his dogs to "coon hunt." He planned to go back to the tree in which he saw the boot toes and, if he did not find a body there, he planned to continue hunting.

When appellant returned to the tree, he saw that there was a slumped-over person in a seated position in a tree stand attached to the tree. He ran back down the ridge and called 911, telling the emergency operator that, while "coon hunting," he discovered a body in a tree in the woods. Over the next several hours, appellant gave widely varying accounts to law enforcement officers concerning his hunting experience that day.

Appellant led the responding law enforcement officers to the tree stand where he had seen the body. Evidence at trial established that the person in the tree was appellant's cousin, Adam Anderson, and that appellant's bullet struck Anderson, killing him almost instantly. At the time appellant shot him, Anderson was sitting in a camouflaged tree stand, dressed in camouflaged clothing, and had with him arrows and a camouflaged bow.

After law enforcement officers removed Anderson's body from the tree, they discovered a turkey call in his mouth. Expert testimony at trial established that during bow and arrow season for

---

[4] The distance of 187 feet, approximately 62 yards, was the distance measured from where appellant stated he shot to the tree stand in which the victim was found. Expert testimony at trial established that Virginia hunter safety courses instruct turkey hunters to shoot at a turkey only if it is within 25 yards of the hunter.

deer, a hunter will often use a "turkey call" device to emulate the sound of a turkey to lure deer to the hunter's location. Expert testimony further established that hunters use this technique to attract deer to the area hunted because the presence of turkeys, who are skittish, in an area suggests to deer that humans are not present.

Appellant at first denied having fired a gun that day, but changed his account after law enforcement officers tested his hands for gunshot residue. He then told an investigator that he was hunting for squirrel with a .50 caliber muzzleloading rifle and that he accidentally shot Anderson while attempting to "bark" a squirrel.[5] He told the investigator that he killed the squirrel by "barking" the tree, but was unable to produce the dead squirrel when asked to do so.

In finding appellant guilty of involuntary manslaughter, the trial court found that the "cardinal rule of hunting is to clearly identify your target [and what is] in the background." It also found that appellant "knew or should have known that there were other people in the area" also hunting that day. In finding appellant guilty, the trial court stated:

> [appellant] said he was sure [the movement he saw in the trees] was a turkey. His expert said that if it sounds like a turkey, you see a movement, then you can be *pretty sure* it's a turkey. Well, I don't think *'pretty sure'* is enough; *'pretty sure'* cannot be enough. The [appellant] has an obligation, a duty, to properly identify the target.

(Emphasis added). The trial court concluded that appellant acted with criminal negligence when he unintentionally killed Anderson, and convicted him of involuntary manslaughter.

## II.

On appeal, appellant contends the evidence presented at trial was insufficient to convict him of involuntary manslaughter, as it did not establish that he was criminally negligent. Appellant, who

---

[5] Testimony established that "barking a squirrel" means to kill a squirrel by shooting the bark of a tree on which a squirrel is located, causing the bark of the tree displaced by the bullet at impact to kill the squirrel.

was hunting in camouflaged clothing, also contends that he could not have known Anderson was camouflaged, that Anderson was "perhaps impossible" to see in a tree stand and, therefore, he could not have acted with reckless disregard for human life when he shot toward what he thought incorrectly to be a turkey, the hunting of which he knew was unlawful at that time.

Involuntary manslaughter

> is defined as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act. The "improper" performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not merely a negligent performance. The negligence must be criminal negligence. The accidental killing must be the proximate result of a lawful act performed in a manner "so gross, wanton, and culpable as to show a reckless disregard of human life."

>         \*     \*     \*     \*     \*     \*     \*

> "'Gross negligence' is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable results of his acts."

Lawson v. Commonwealth, 35 Va. App. 610, 617-18, 547 S.E.2d 513, 516-17 (2001) (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992) (internal citations omitted)).

In Lawson, guided by the Supreme Court's holding in Cable, this Court affirmed the conviction of a hunter who unintentionally killed another hunter when he failed to properly identify his target before discharging his weapon at what he incorrectly thought to be a turkey.

In Cable,

> the defendant heard a squirrel barking off to his right. Cable started walking towards the sound of the squirrel, thought to be twenty yards away. He approached "a big old tree" by a ravine.

At the edge of the ravine, Cable stopped, not wanting to proceed through the thick foliage. He heard something like a squirrel jumping, whereupon he turned, aimed his gun, and when he saw a flash of movement, black in color, he shot at the movement. The shot fatally wounded Cable's hunting partner, dressed in camouflage, whom Cable believed to be elsewhere. The Supreme Court held Cable's actions, in failing to identify his target which resulted in the killing of another hunter, amounted to involuntary manslaughter.

Lawson, 35 Va. App. at 620, 547 S.E.2d at 517.

In Lawson, the accused

had spent the morning sitting on a log looking and waiting for a turkey while his friend had gone elsewhere to hunt. At midday, [he] was returning toward his truck to meet his friend for lunch when he saw on his path that the leaves had been disturbed. He interpreted the vegetation disturbance as "turkey scratch feeding." He then heard what he thought was a turkey yelping and started "trying to make a visual." He saw "something black . . . the black object [that was] kind of bobbing up and down." "It looked exactly like a turkey . . . because of the way it was going up and down, doing that number right there like it was scratching at the time and feeding." "I looked really good and I, I knew this was a turkey, and I didn't see nothing around the turkey at all, so I put the gun up, I waited a second, I looked at it, and then I pulled one shot." He got ready to shoot again but nothing moved. Then he ran down the hill and found [the victim] and his dog, both dead. [The accused] immediately went for help.

[The accused], on cross-examination, agreed that he had not told [the investigating law enforcement officer] that he had seen the black object looking exactly like a turkey "bobbing up and down," but claimed that "this is all I've been able to think about for five months, so I've been able to go over it plenty by myself." He also admitted that he told [the officer] that he did not see any colors or anything to indicate that what he saw was actually a turkey, but insisted that "before I pulled the trigger I saw a black object moving up and down like it was feeding. I watched it." However, he also agreed that he answered, "Yes sir," when [the officer] asked him to confirm that, although he saw movement and heard the sounds he believed to be a turkey, he did not identify it as a turkey before he shot.

Id. at 614-15, 547 S.E.2d at 515.

In Lawson, this Court concluded that the accused, "as a hunter, had a duty to properly identify his target and everything in the area prior to firing his firearm." Id. at 620, 547 S.E.2d at 518. We found that the accused's "firing into thick brush without ascertaining if the dark object was actually a turkey, in an area where he knew at least one other hunter was present, evidenced a wanton and culpable disregard for human life amounting to criminal negligence." Id.

Here, the trial court found that appellant knew or should have known that there were other hunters in the area that day. Indeed, the evidence presented at trial established that there were "at least six hunters within a mile or a mile and a-half" of the location where appellant shot Anderson. The trial court, while noting that Anderson wore camouflaged clothing and was "hard to see, maybe impossible to see" in a camouflaged tree stand, also found the fact that another hunter is camouflaged does not "absolve[] a hunter of a duty to try to identify the target, going back to the cardinal rule, to identify the target clearly before you fire a shot." Indeed, appellant himself wore camouflage clothing the day he shot Anderson. The trial court found that "[appellant] ha[d] an obligation, a duty, to properly identify the target. In this case, the evidence was it would have taken a few steps; it would have taken a little more time; it would have taken a little more patience, which he did not demonstrate."

Guided by the holdings in Cable and Lawson, and by the evidence contained in the record, we conclude that the trial court did not err in its finding that appellant acted in a criminally negligent manner, with a wanton and culpable disregard of human life, when he fired at a target he did not fully identify and thought incorrectly to be a turkey, the hunting of which was unlawful at that time. See Cable, 243 Va. at 241, 415 S.E.2d at 221; Lawson, 35 Va. App. at 620, 547 S.E.2d at 518.

Accordingly, we affirm appellant's conviction.

Affirmed.