COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Kelsey, Alston and Decker
Argued at Alexandria, Virginia


MARCHE TYSHON YOUNG

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0149-13-4                JUDGE MARLA GRAFF DECKER
                                                    JANUARY 21, 2014

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                       Benjamin N. A. Kendrick, Judge Designate

            Denise Jakabcin Tassi for appellant.

            Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Marche Tyshon Young (the appellant) was convicted, upon his plea of guilty, of robbery in

violation of Code § 18.2-58, and was sentenced to serve twenty years in prison.  On appeal, he

contends that the circuit court erred in denying his motion to withdraw his guilty plea in light of

what he alleges was the Commonwealth's failure to comply with a district court discovery order.

We hold that the appellant has not demonstrated a discovery violation or prejudice and,

consequently, has failed to prove that permitting him to withdraw his guilty plea after sentencing

was necessary in order to meet the statutory standard of preventing a manifest injustice.

Accordingly, we affirm the appellant's conviction.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

On February 23, 2012, the appellant was arrested on four warrants charging him with robbery, using a firearm in the commission of a felony, grand larceny, and possession of burglary tools.

Counsel was appointed for the appellant, and the general district court subsequently entered an agreed order of discovery.  The order, in pertinent part, required the Commonwealth, pursuant to Rule 7C:5, to:

> permit the [accused] to . . . inspect and copy . . . the following information or material when the existence of such is known or becomes known to the prosecuting attorney or representative of the Commonwealth and such material or information is to be offered in evidence against the accused in the above referenced court:
>
> *       *       *       *       *       *       *
>
> 2.  Any criminal record of the accused.

Pursuant to the order, the Commonwealth provided the appellant with a copy of his Virginia Criminal Information Network (VCIN) report containing his Virginia criminal history.  The Commonwealth's discovery response also provided that the appellant's counsel "may inspect defendant's national criminal history records (NCIC), if any, by contacting the Office of the Commonwealth's Attorney."

The appellant's VCIN report showed only the four charged offenses of February 20, 2012, and indicated that "[t]he interstate identification index contains no additional data."  Further, the VCIN report noted:  "This is a single-source record.  No additional criminal history information is indexed in NCIC-III for other state or federal offenses."  The report also specifically cautioned that its contents were obtained by comparing the "requestor furnished information"—fingerprints—to "data contained in the files of the Virginia State Police Criminal Records Exchange only and [did] not preclude the existence of other criminal history information which may be contained in the

repository of other local, state or federal criminal justice agencies." The document did not contain the appellant's social security number, indicating "none [was] recorded in Virginia files," thereby precluding a search for any additional criminal records for the appellant using a social security number.

Following discovery in the district court, the appellant and the Commonwealth negotiated a plea agreement and the appellant waived his right to a preliminary hearing. The parties agreed that the appellant would plead guilty to robbery in exchange for the Commonwealth's disposing of the other charges by *nolle prosequi* and recommending a sentence at the low end of the sentencing guidelines range for the robbery offense. According to the appellant, the guidelines calculations based on the information known to the parties at that time provided a range of three years four months to six years six months.

Consistent with the understanding between the parties, the appellant was indicted only for robbery. Without pursuing any discovery in the circuit court, the appellant executed a document with the Commonwealth memorializing the plea agreement they had reached in the district court. That document set forth the terms of the agreement, which included that the Commonwealth would recommend punishment at the "low end of the Virginia sentencing guidelines [range]." It did not specify the guidelines range. With regard to his sentence, it indicated that the appellant understood that the punishment permitted by law spanned five years to life in prison and that the actual sentence was in the discretion of the court. The agreement also contained language addressing the fact that if the court chose not to accept the Commonwealth's sentencing recommendation, the appellant would "have no right to withdraw [his] plea of guilty." Finally, the document memorialized that the appellant acknowledged that he waived specific constitutional rights by pleading guilty, including trial by jury and due process to compel the production of evidence and the attendance of witnesses at trial.

The court conducted a plea colloquy and concluded that the appellant's guilty plea was voluntary and that he understood the nature and consequences of the plea. After hearing a proffer of the evidence, the circuit court accepted the plea, entered an order convicting the appellant, and scheduled his sentencing for December 11, 2012. The appellant requested a presentence report.

At least five days prior to sentencing, the appellant received a copy of the presentence report that was prepared pursuant to Code § 19.2-299. That report reflected juvenile charges for carjacking, robbery, and other related offenses that occurred in the District of Columbia (D.C.) in 2009. The report also indicated that regarding the D.C. offenses, the appellant entered pleas of guilty to robbery and carrying a dangerous weapon and was sentenced to one year of supervised probation. The carjacking and other charges were disposed of by *nolle prosequi*. The report further indicated that on March 3, 2010, the appellant's "case was transferred to Virginia for courtesy supervision" and that he "successfully completed his probation." Finally, the presentence report noted that the information about the D.C. offenses "was obtained from information on file at the Prince William County Juvenile Probation office."

On December 7, 2012, after having been made aware of the D.C. offenses, the appellant filed a sentencing memorandum in which he asked to be sentenced pursuant to Code § 19.2-311, the Youthful Offender Act. In support of this request, the appellant pointed out that he had participated in "the UTURN program" in the District of Columbia and subsequently successfully completed juvenile probation. He also referenced other information from the presentence report to support his "potential" and suitability for Virginia's youthful offender program. The memorandum did not seek to withdraw the guilty plea and, instead, used the D.C. record to support the appellant's request for application of the Youthful Offender Act.

At the sentencing hearing on December 11, 2012, the appellant, through counsel, stated that he had no additions or corrections to the presentence report. The appellant asked the court to order

- 4 -

that he be evaluated for the youthful offender program and indicated that "the Commonwealth ha[d] no objection to this request." The court denied the motion.

After the court's ruling, the appellant requested a continuance. In support of the request, the appellant's counsel pointed to the disparity between the appellant's new sentencing guidelines calculations, which included the D.C. juvenile offenses, and the calculations for his current co-defendants. Counsel also asked "[for leave] to further consult with the Commonwealth on the plan." She argued that "[t]he problem with juvenile adjudications . . . is that we don't know about them at the time of the preliminary hearing when [plea agreements] are worked out. *The Commonwealth and I did not know about the prior record.* It was not taken into consideration when we reached the plea agreement." (Emphasis added).

The court, in response, recited the details from the presentence report concerning the appellant's D.C. adjudications, which involved armed carjacking and armed robbery of an elderly man, along with other related offenses. The court stated that the only "break" it was willing to give the appellant for the instant robbery conviction was to keep his sentence within the guidelines range calculated pursuant to Code § 19.2-298.01(C). The trial court denied the appellant's motion for a continuance.

The appellant's counsel reiterated her request for the court to sentence the appellant at the low end of the guidelines range and again mentioned the youthful offender program. The court noted that the appellant did not cooperate in the preparation of the presentence report and that he had already had a chance at rehabilitation following the D.C. carjacking and robbery. The court sentenced the appellant to twenty years in prison for the instant robbery. Once the sentence was imposed, counsel inquired, "Nothing suspended, Your Honor, even though the Commonwealth agrees with [it?]" The court responded, "No way. No way. If it wasn't for the guidelines, he'd never get out. Where does this nonsense end?"

On January 7, 2013, following entry of the sentencing order, the appellant moved to withdraw his guilty plea.[1] In support of the motion, counsel argued that the Commonwealth had been under a discovery order requiring it to produce "any criminal record of the accused." Counsel suggested that this duty was a continuing one and that the Commonwealth violated it by not disclosing "the existence of the juvenile robbery adjudication . . . until it appeared in the [presentence report]." The appellant's counsel emphasized that the guidelines range *without* the juvenile adjudications was "artificially low" at three years four months to six years six months. This range was below the statutory range for robbery. The actual guidelines range provided for sentencing was thirteen years two months to twenty years eight months *with* the juvenile adjudications added to the calculations. Counsel claimed that because of the failure to disclose the juvenile record, the appellant did not make an informed and intelligent waiver of his constitutional right to a jury trial and, instead, made the choice to plead guilty based upon a mistake of material fact—the artificially low sentencing guidelines range.

The appellant's counsel and the court engaged in the following exchange:

> [APPELLANT'S COUNSEL]: . . . [O]nce that juvenile conviction was presented his guideline range was a bottom of 13 years. Your Honor, not knowing this [fact] affected his right to decide whether or not he should proceed to trial.
>
> THE COURT: But he knew [about his prior record in the District of Columbia].
>
> Why didn't he tell you?
>
> [APPELLANT'S COUNSEL]: Your Honor, we discussed this early on. And, Your Honor, *he did not believe it was a conviction or that it was on his record.*
>
> THE COURT: He didn't tell you anything about it?

---

[1] The appellant also filed a motion to reconsider his sentence and reduce it to the range recommended by the Commonwealth. However, the court never ruled on this motion and the appellant has not raised this issue on appeal. See Rules 5A:12(c)(1)(i), 5A:18.

[APPELLANT'S COUNSEL]: Your Honor, *he thought it was dropped*. And in looking at the pre-sentence report, it shows –

THE COURT: This was the one that was very similar to the armed robbery that he was charged with here.

[APPELLANT'S COUNSEL]: I understand, Your Honor. Well, according to the facts . . . in the pre-sentence report that is what happened.

Your Honor, however, *he did not believe it was a conviction. That it stayed on his record. That's understandable. He only received probation and community service.* Your Honor, many adults don't even understand their criminal history much less a 15 year old. He was 15 at the time of that alleged robbery.

However, Your Honor, that still doesn't release the Commonwealth's duty to produce any criminal record which is what is required under the discovery rule in general district court.

Your Honor, also, which complicates this, which I think places an extra burden on the Commonwealth, is that his probation was transferred to Virginia. So the Virginia juvenile probation office was supervising him. So the Commonwealth agents knew about this conviction[;] however, the Commonwealth did not provide his record.

Your Honor, that greatly increased my client's sentencing guidelines and as a result he waived his due process rights, his constitutional rights and was not able to knowingly and intelligently waive those constitutional rights.

So we are asking the Court to allow him to withdraw his guilty plea.

(Emphases added).

The prosecutor pointed out that the Commonwealth did not have access to the juvenile records of the District of Columbia or Virginia "anymore than anybody else." The prosecutor also argued that he provided everything to which the Commonwealth had access. He suggested that it was the appellant's fault for "his own failure to be honest with his attorney." Further, the prosecutor noted that the appellant conceded in the plea colloquy that he understood that the court was not

- 7 -

bound by the Commonwealth's sentencing recommendations. Finally, the prosecutor contended that the court's decision to sentence the appellant to a term that exceeded either the guidelines or the Commonwealth's recommendation "[was] not grounds for him to withdraw his guilty plea."

The court noted that in the earlier proceeding, after a colloquy, it found that the appellant's guilty plea "was made freely and voluntarily with an understanding of its nature and its consequences." The court further stated that the appellant's acknowledgement was accompanied by his "admi[ssion] that he was pleading guilty because he was in fact guilty." The court opined, "I think [the appellant] was trying to keep [the D.C. juvenile adjudications] from [counsel] and . . . the Court. That's his problem." The court concluded by denying the postsentencing motion to withdraw the guilty plea.

## II. ANALYSIS

The appellant contends that the Commonwealth failed to comply with a general district court discovery order and, as a result, that the circuit court erred in denying his postsentencing motion to withdraw his guilty plea. The appellant suggests that failure to disclose such a "material fact" as his past juvenile record prevented him from entering his guilty plea knowingly and voluntarily and, thus, resulted in manifest injustice. We disagree for the reasons that follow.

The law regarding withdrawal of guilty pleas is well settled. Whether to allow a defendant

> "to withdraw a plea of guilty for the purpose of submitting one of not guilty is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949). In addition, "[t]he court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones v. Commonwealth, 29 Va. App. 503, 512, 513 S.E.2d 431, 435 (1999).

Howell v. Commonwealth, 60 Va. App. 737, 745, 732 S.E.2d 722, 726 (2012) (citation omitted); see Justus v. Commonwealth, 274 Va. 143, 152, 645 S.E.2d 284, 288 (2007) (noting that although

- 8 -

Parris was decided under former Rule 3A:25(d), which was codified in Code § 19.2-296 in 1975, it "remains the standard for consideration and review of a motion made under the [statute]").  The trial court's ruling should be reversed "only upon 'clear evidence that [the decision] was not judicially sound.'"  Coleman v. Commonwealth, 51 Va. App. 284, 289, 657 S.E.2d 164, 166 (2008) (alteration in original) (quoting Jefferson v. Commonwealth, 27 Va. App. 477, 488, 500 S.E.2d 219, 225 (1988)).

Code § 19.2-296 places particular significance on the timing of a motion to withdraw a plea of guilty or *nolo contendere*.  That section provides that such a motion "may be made only before sentence is imposed or imposition of a sentence is suspended."  The only exception provided is that where necessary "*to correct manifest injustice*, the court . . . may set aside the judgment of conviction and permit the defendant to withdraw his plea."  Code § 19.2-296 (emphasis added).  In crafting this very limited exception, "the General Assembly has provided the courts with a standard that governs motions to withdraw a guilty plea that are made *after* sentencing."  Pritchett v. Commonwealth, 61 Va. App. 777, 785, 739 S.E.2d 922, 926 (2013).

"[L]ogic dictates that the standard [for withdrawing a guilty plea prior to sentencing] must be more liberal than the [postsentencing withdrawal] requirement of showing a manifest injustice."  Justus, 274 Va. at 153, 645 S.E.2d at 288.  The presentencing standard, as enunciated by the Supreme Court of Virginia in Parris,

> requires the defendant (i) to establish a good-faith basis for making the guilty plea and later seeking to withdraw it, and (ii) to proffer evidence of a reasonable basis for contesting guilt.  The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court.  The second requirement defeats motions to withdraw which would result in an essentially futile trial.

Cobbins v. Commonwealth, 53 Va. App. 28, 34, 668 S.E.2d 816, 819 (2008) (citation omitted).

The "good faith" prong of the test requires proof that the plea was submitted "under an *honest mistake* of material fact" or "was induced by fraud, coercion or undue influence and would not otherwise have been made." Parris, 189 Va. at 324, 52 S.E.2d at 873 (emphasis added); see Pritchett, 61 Va. App. at 787-90, 739 S.E.2d at 927-28. Proof that a defendant "took a look at what the consequences might be after he pled guilty and had buyer's remorse" supports a finding that the defendant was not acting in good faith in seeking to withdraw his plea. Branch v. Commonwealth, 60 Va. App. 540, 548-49, 729 S.E.2d 777, 781-82 (2012) (internal quotation marks omitted).

In contrast, after sentencing, the more restrictive "'manifest injustice'" standard applies. Justus, 274 Va. at 152, 645 S.E.2d at 288 (quoting Code § 19.2-296). The purpose of "'[t]he more severe standard is . . . to avoid motions for withdrawal based on disappointment in the terms of the sentence.'" Howell, 60 Va. App. at 746, 732 S.E.2d at 726 (internal quotation marks omitted) (quoting Lilly v. Commonwealth, 218 Va. 960, 965, 243 S.E.2d 208, 211 (1978)). The term "manifest" is defined in this context "'as being synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, [it means] that which is clear and requires no proof; that which is notorious.'" Id. at 746, 732 S.E.2d at 726-27 (internal quotation marks omitted) (quoting Johnson v. Anis, 284 Va. 462, 466, 731 S.E.2d 914, 916 (2012)). Extrapolating from this definition, the Court has held:

> Manifest injustice amounts to an obvious miscarriage of justice, such as an involuntary guilty plea or a plea based on a plea agreement that has been rescinded. "In examining a case for miscarriage of justice," courts determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." In addition, "a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred."

Id. at 746-47, 732 S.E.2d at 727 (citations omitted) (internal quotation marks omitted) (quoting Tooke v. Commonwealth, 47 Va. App. 759, 765, 627 S.E.2d 533, 536 (2006)).

The appellant argues that he should have been permitted to withdraw his guilty plea *after* sentencing because he entered it under a material mistake of fact. He further contends that he was operating under this material mistake of fact because the Commonwealth failed to comply with the district court discovery order. We hold that the appellant failed to establish a discovery violation or prejudice and did not demonstrate manifest injustice. Therefore, the trial court did not err when it denied his postsentencing motion to withdraw his guilty plea.

Rule 7C:5, which governs discovery in criminal matters in general district courts, contains a continuing duty of disclosure, but that duty is expressly limited to "material or information [that] is to be offered in evidence against the accused in a General District Court." Rule 7C:5(c). Further, the rule specifically "*applies only* to the prosecution for a misdemeanor which may be punished by confinement in jail and *to a preliminary hearing for a felony*." Rule 7C:5(a) (emphasis added).

The instant discovery order tracked the language of the rule by requiring the Commonwealth to provide the appellant with only "such material or information [that] is to be offered into evidence against the accused in the [general district] court." Thus, as the Commonwealth suggests, its duty to provide evidence under the rule and the discovery order was limited to the proceedings in the general district court. Additionally, that duty terminated, pursuant to the language of the rule as embodied in the discovery order, when the appellant waived his right to a preliminary hearing.

The appellant engaged in no additional discovery in the circuit court before executing the written agreement and entering his guilty plea. See Rule 3A:11(a) (stating, in relevant part, that the rule applies only "to any prosecution for a felony *in the circuit court*" (emphasis added)); Lawson v. Commonwealth, 35 Va. App. 610, 621-22, 547 S.E.2d 513, 518-19 (2001) (noting that discovery under Rule 3A:11 and Code § 19.2-265.4 requires a request and court order); Abunaaj v. Commonwealth, 28 Va. App. 47, 53, 502 S.E.2d 135, 138 (1998) (observing that discovery in

circuit court may occur by consent order). Additionally, the Commonwealth was under no *sua sponte* duty to provide information about the out-of-state juvenile adjudications in either the general district or circuit court. See Smoot v. Commonwealth, 37 Va. App. 495, 502 n.1, 559 S.E.2d 409, 412 n.1 (2002) (holding that late disclosure of inculpatory information is governed only by the rules of court, not constitutional principles). Thus, in this case, because the Commonwealth had neither a court-ordered nor *sua sponte* duty to disclose any inculpatory information about the appellant's juvenile record, the fact that it did not do so did not create a material mistake of fact or prejudice the appellant.

The appellant concedes that the prosecutor did not have actual knowledge of his juvenile adjudications during district court discovery and first learned of his juvenile record when the parties received the presentence report prepared by the Prince William County Probation Office. The appellant does not suggest that the computerized criminal records check provided to him by the prosecution was deficient. Nor does he suggest any bad faith behavior by the prosecutor. He contends only that the prosecutor had an absolute duty to learn of his out-of-state juvenile adjudications through the probation office and to provide that information earlier in the proceedings, as part of the general district court discovery pursuant to Rule 7C:5, before he entered his guilty plea.

The appellant has failed to provide legal authority in support of this argument. In addition to the limitation in Rule 7C:5(c) that the Commonwealth need disclose only "information that is to be offered in evidence against the accused" in general district court, the rule states that "any criminal record of the accused" shall be provided to the accused "when the existence of such is known or becomes known to the prosecuting attorney or *representative of the Commonwealth* [in the case in the general district court]." Rule 7C:5(c) (emphasis added); see also Rule 3A:11(b) (permitting discovery in the circuit court of various records "the existence of which is known to the attorney for

- 12 -

the Commonwealth" or "that are within the possession, custody, or control of the Commonwealth" or "are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth"). There is no dispute that the prosecutor first became aware of the juvenile record when the presentence report was transmitted by the probation officer. The appellant suggests only that since a juvenile probation officer knew, the Commonwealth had a duty to disclose the record.

The phrase "representative of the Commonwealth" does not encompass *all* employees of the Commonwealth or its agencies. For purposes of discovery in circuit court under Rule 3A:11(b), "[w]here an agency *is . . . a part of the prosecution*, the prosecutor will be charged with constructive knowledge of agency information . . . ." Ramirez v. Commonwealth, 20 Va. App. 292, 297 n.1, 456 S.E.2d 531, 533 n.1 (1995) (discussing the interplay between discovery under Rule 3A:11 and the issuance of subpoenas *duces tecum* to non-parties under Rule 3A:12); see Abunaaj, 28 Va. App. at 54-55, 502 S.E.2d at 138-39 (reversing the defendant's conviction where the Commonwealth failed to disclose, pursuant to a consent circuit court discovery order, an audio recording the police had made when a witness telephoned the defendant from the police station, at the request of the police and after they had coached the witness about what to say). "The Commonwealth is charged with the responsibility to interview [only] all government personnel *involved in a case* in order to comply with its discovery obligation." Harrison v. Commonwealth, 12 Va. App. 581, 585, 405 S.E.2d 854, 857 (1991) (emphasis added) (citing Fitzgerald v. Bass, 6 Va. App. 38, 52, 366 S.E.2d 615, 623 (1988) (en banc)); see Coley v. Commonwealth, 55 Va. App. 624, 631, 688 S.E.2d 288, 292 (2010) (holding that even under the constitutional duty to produce exculpatory evidence, "'the individual prosecutor has a duty to learn [only] of any . . . evidence known to the others acting on the government's behalf *in the case*'" (emphasis added) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995))).

We hold that under Rule 7C:5, like under Rule 3A:11, the Commonwealth's duty to produce any criminal record of the accused "known to the . . . representative of the Commonwealth" refers only to representatives of the Commonwealth *involved in the instant case in the court that issued the order*, and prior to the preliminary hearing or waiver of such hearing. Here, the Prince William County Probation Office was not involved in the proceedings in general district court and did not become involved in the case in the circuit court until that court ordered a presentence report. In this case, no knowledge of the appellant's juvenile record was imputed to the prosecutor prior to the entry of the guilty plea.

Further, even assuming the Commonwealth had a duty to learn of the juvenile adjudications and to inform the appellant of them in general district court discovery, "to constitute reversible error, the Commonwealth's late disclosure of inculpatory evidence must prejudice the defendant's case." Smoot, 37 Va. App. at 502, 559 S.E.2d at 412; see Abunaaj, 28 Va. App. at 54, 502 S.E.2d at 139. Thus, the appellant was not entitled to relief unless he established that he was prejudiced by any such omission. The alleged undisclosed information—the appellant's out-of-state juvenile record—was inculpatory in nature and, of course, was known or should have been known by the appellant. Cf. Commonwealth v. Tuma, 285 Va. 629, 635-37, 740 S.E.2d 14, 18-19 (2013) (holding that where the defendant, prior to trial, had reason to believe an audio recording existed that contained Brady impeachment evidence and failed to request a continuance when, during trial, he received confirmation of the existence of that evidence, he "failed, as a matter of law, to show he was denied access to the . . . recording in sufficient time to effectively use it at trial"); Thomas v. Commonwealth, 244 Va. 1, 18, 419 S.E.2d 606, 616 (1992) ("Thomas himself knew more than anyone else about the role of [certain evidence] . . . . Thomas is as much to blame for the[] ignorance [of his attorneys] as anyone connected with the case. Under these circumstances, it would be unrealistic to say that the Commonwealth . . . was guilty of violating . . . Brady [v.

- 14 -

Maryland, 373 U.S. 83 (1963)]."); Stockton v. Murray, 41 F.3d 920, 927 (4th Cir. 1994) (holding "Brady does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense").

The facts in this case, giving the appropriate deference to the trial court, support its finding that the appellant knew of his juvenile record and kept it from his counsel and the court. He was, necessarily, aware of his prior involvement with the District of Columbia justice system. Regardless of whether he fully appreciated the *significance* of that prior involvement, he knew enough to inform his attorney about it so that she could factor this involvement into her advice regarding whether he should plead guilty in the instant matter. Additionally, once the probation office became involved in the case, it provided the parties with the presentence report containing the appellant's prior juvenile record. This information was provided at least five days prior to sentencing. The presentence disclosure provided the appellant with sufficient time before sentencing to assess the impact of the change in the guidelines on his decision to plead guilty. See Howell, 60 Va. App. at 747, 732 S.E.2d at 727 (noting that the defendant's assertion of an affirmative defense as part of his postsentencing motion to withdraw came too late because "[t]his basis for withdrawal," like a claim of a material mistake of fact, "[is relevant] only before sentencing when a more liberal standard applies"). Thus, the appellant failed to establish any prejudice from the nondisclosure, and the record supports the contrary.

Despite appellant's knowledge of his juvenile record, he made a tactical decision not to ask to withdraw his guilty plea at the time the guidelines were recalculated and, instead, did not seek to withdraw it until *after* sentencing. This, of course, was also after the trial court had rejected both his request to participate in the youthful offender program and the Commonwealth's recommendation to sentence him at the lower end of the guidelines range. Further, the appellant's motion to withdraw his plea came after the court had sentenced him to twenty years in prison with no time

suspended. The appellant knew prior to entering his plea that, regardless of the guidelines range, he had no guarantee that the trial court would sentence him in accordance with the recommendation of the prosecutor. In fact, as the plea agreement makes clear, the appellant knew that he could receive a sentence of five years to life. Further, the appellant benefitted from his plea. The Commonwealth disposed of the other charges by *nolle prosequi*, greatly reducing the appellant's exposure, and recommended the low end of the guidelines for robbery. Based on the timing of his postsentence motion and the record before the court, the appellant's request to withdraw his plea clearly suggests not manifest injustice but, instead, a last-ditch effort to change his fate based on disappointment over the stiff sentence imposed by the court. See Howell, 60 Va. App. at 747, 732 S.E.2d at 727 (holding that the defendant's request to withdraw his guilty plea, made after sentencing, "appears to have been prompted by 'disappointment in the sentence [imposed]'" and, therefore, did not establish manifest injustice (alteration in original) (quoting Lilly, 218 Va. at 965, 243 S.E.2d at 211)).

## III.

The record shows that the Commonwealth did not violate the general district court's discovery order and that the appellant was not prejudiced by any late disclosure of his juvenile record. It further demonstrates that the appellant had ample time to seek to withdraw his guilty plea prior to sentencing but chose not to do so. The appellant has failed to show manifest injustice entitling him to the extreme remedy of withdrawing his guilty plea after sentencing.[2]

---

[2] We note that even under the lower standard for withdrawing a guilty plea in the presentencing context, a defendant not only must prove an honest mistake of material fact but also must proffer a reasonable basis for contesting guilt. See Cobbins, 53 Va. App. at 34, 668 S.E.2d at 819. The appellant assigned error based only on the alleged discovery violation. We have held that no such violation occurred and, even if it did, that the appellant suffered no prejudice. Thus, we do not address the failure-to-proffer issue. See McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010) (noting that "faithful adherence to the doctrine of judicial restraint warrants [the] decision of cases 'on the best and narrowest ground available'" (quoting Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991))).

The trial court did not abuse its discretion in denying the appellant's motion to withdraw his guilty plea after sentencing. Therefore, we affirm his conviction.

<u>Affirmed.</u>