COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia


DAVID JUNIOR HOWELL

                                                            OPINION BY
v.        Record No. 0130-12-2                      JUDGE GLEN A. HUFF
                                                         OCTOBER 16, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

John W. Parsons for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


David Junior Howell ("appellant") appeals his guilty plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), and subsequent conviction of one count of grand larceny, in violation of Code § 18.2-95.  Following a bench trial in the Circuit Court of Henrico County ("trial court"), appellant was sentenced to twenty years in prison, with fifteen years suspended. On appeal, appellant contends that the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea.[1]  For the following reasons, this Court affirms the trial court.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

_____

[1] Appellant's initial appeal to this Court in 2010 was dismissed on April 26, 2011. Howell v. Commonwealth, No. 1157-10-2 (Va. Ct. App. Apr. 26, 2011).  The Supreme Court subsequently granted appellant's petition for a writ of habeas corpus granting appellant a delayed appeal on December 7, 2011.  Howell v. Warden of the Deep Meadow Correctional Center, No. 111161 (Va. Dec. 7, 2011).

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

On October 1, 2009, appellant entered a guilty plea pursuant to Alford to one count of grand larceny.  During an extensive colloquy between appellant and the trial court, appellant stated that he had spoken with Dennis Martin ("Martin"), his trial attorney, about the charge and that Martin explained it to him.  Appellant also affirmatively responded that he understood he had a right to plead not guilty and a right to a jury, but that he nevertheless wished to waive his right to a jury and plead guilty.

The trial court then asked if appellant understood that

> [p]leading guilty under Alford . . . means that you profess your innocence but you want to plead guilty for whatever reason you may have.  It may be because of a plea agreement.  It may be because you do[ no]t want to take a chance that you[ wi]ll be convicted and you[ woul]d rather have the benefit of a guilty plea and whatever that might do for you, or for any other reason that you may have.

Appellant responded that he understood and that he also understood that the guilty plea pursuant to Alford was still a guilty plea.  Appellant further indicated that he understood that he was giving up several rights, which included the right against self-incrimination, the right to confront and cross-examine witnesses, and the right to appeal.  Appellant also confirmed that he was making the plea willingly and voluntarily and that no one had threatened him or tried to intimidate him to get him to plead guilty.  At the conclusion of the colloquy, appellant replied that he still wished to plead guilty pursuant to Alford, and the trial court found appellant's plea was knowingly, intelligently, and voluntarily made.

The Commonwealth then presented a summary of the evidence establishing that appellant had an ongoing scheme to defraud Courtney Bunn, an elderly lady, of over $40,000.  After the

Commonwealth concluded its summary of the evidence, appellant's counsel stated that appellant disputed receiving the amount of cash that Ms. Bunn claimed she gave him, and asserted that he had performed the work that he was contracted to do as well as some additional work she had asked him to perform. Martin stated, however, that appellant was entering a guilty plea because he had some prior felony convictions that would go to his credibility.

On February 11, 2010, the trial court held the sentencing hearing at which the trial court imposed a sentence of twenty years in prison with fifteen years suspended. On February 22, 2010, appellant, *pro se*, filed a motion to withdraw or vacate his guilty plea. Appellant stated in his motion that he was not aware at the time he entered the plea that a guilty plea pursuant to Alford was a guilty plea that would result in a conviction. Appellant further claimed that Martin told him that the plea was in his best interest and that it could be withdrawn at any time.

The Commonwealth filed a response to appellant's motion to withdraw his guilty plea on February 26, 2010. On May 4, 2010, the trial court held a hearing on appellant's motion, and denied appellant's motion to withdraw his guilty plea. At the hearing, appellant testified[2] that the trial court should grant his motion because Martin "never explained the different options to me concerning my charge." Appellant claimed that Martin did tell him, however, that a guilty plea pursuant to Alford could be withdrawn at any time and that he entered the guilty plea pursuant to Martin's advice even though he did not want to do so.

---

[2] Brice Lambert ("Lambert"), appellant's counsel at the motion to withdraw hearing, indicated that he told appellant prior to trial that he did not understand how he was going to argue appellant's motion as the record on its face was devoid of anything that would suggest a good faith basis for the motion such as having a misconception of the nature of the charges, a misunderstanding of their effect, or that appellant was coerced through fear, fraud, or official misrepresentation, as would be required under the lesser standard applicable to a pre-sentencing motion to withdraw a guilty plea. Lambert then informed the trial court that appellant relayed different things to him; and thus, Lambert asked the trial court to swear appellant in so that appellant could tell the trial court the basis for his motion other than what was in the transcript.

With regard to meeting with Martin to discuss the case, appellant stated that he only had one conversation with Martin during Martin's representation of him and that he did not have the chance to discuss the case with Martin because Martin "did[ no]t come to visit me . . . to discuss the situation." Appellant admitted it was possible, however, that he had spoken with Martin more than once, but he could not recall because he "was going through some major mental issues." Appellant further stated that, due to the "mental issues" he had been going through, he did not recall exactly when he had the conversation with Martin regarding the guilty plea and his desire to go forward with a trial, but he recalled that the conversation occurred after he had entered the guilty plea.

Regarding his colloquy with the trial court, appellant stated that he could not remember his responses to the trial court's questions because he "was going through some major mental health issues at the time," which included "some suicidal issues." Appellant also indicated that he was taking some kind of medication at that time, but he could not recall the name of it.

Martin testified at the hearing that he had not met with appellant prior to the preliminary hearing because appellant, who was not incarcerated at that time, did not arrange to meet with Martin. Martin spoke with appellant for a few minutes before the preliminary hearing during which conversation they agreed to proceed with the preliminary hearing. After the hearing, Martin met with appellant for about fifteen to thirty minutes, and appellant told Martin that he believed Ms. Bunn was giving the money to someone else and that appellant would help Martin find "this gentleman." At the conclusion of the meeting, appellant stated that he would contact an investigator to help find "the gentleman" and that he would contact Martin to set up an appointment to discuss the case. Martin, however, did not hear from appellant again until the day of trial.[3]

_____

[3] Appellant failed to appear for the first court date, and was subsequently arrested pursuant to a capias that the trial court issued.

On October 1, 2009, Martin met with appellant at the courthouse immediately prior to trial and noticed that appellant's "demeanor and conviction about his innocence had completely changed." Martin discussed with appellant the Commonwealth's plea offer to drop the false pretenses charge due to the harsh sentencing guidelines for this offense if appellant pled guilty to the larceny charge. Martin also told appellant he was attempting to consolidate the charges in this case with other similar charges against appellant in another pending case so that appellant would have only one sentencing hearing.

Martin testified that during the meeting, he advised appellant of his right to a jury trial; and he explained that by entering a guilty plea, appellant would be waiving his right to a jury trial, the right to cross-examine and confront witnesses against him, the right against self-incrimination, the right to defend himself, and the right to appeal. Martin further informed appellant that the trial court would ask appellant if he understood the charges, whether he was entering the plea intelligently and knowingly, and if he knew the maximum penalty for the charges. Martin also told appellant that he could decline the agreement and proceed to trial. In response, appellant told Martin that he was aware of everything that Martin had stated and that he still wanted to take the plea agreement.

Martin also stated that appellant was hesitant to plead guilty because he claimed he did not have an ongoing scheme to defraud Ms. Bunn, so Martin explained to him the possibility of a guilty plea pursuant to Alford. Martin also testified that he did not tell appellant that appellant could withdraw the guilty plea at any time, but that he told appellant the guilty plea pursuant to Alford was a guilty plea. Martin then indicated that the first time appellant told Martin he wanted to withdraw his guilty plea was at the sentencing hearing after the trial court had sentenced him.

In closing arguments, the Commonwealth stated that Ms. Bunn's mother, who was elderly and now in a nursing home, was a material witness and would be unavailable to testify if appellant were allowed to withdraw his guilty plea. The trial court then found that there was no manifest injustice based on the facts of the case, and denied appellant's motion. The trial court noted appellant's allegations and expressly found Martin's statements of the facts to be credible and that the trial court had advised appellant of "the nature of an Alford plea, that it was a guilty plea, and [appellant] was fully advised of all other rights relative to a guilty plea."

The trial court then held that Martin's counsel was not ineffective and that appellant was not misadvised nor did he have "any misconception with regard to the nature of his plea and the charges against him and the alternatives to trial." The trial court reiterated that, "if [appellant] says that he did not understand, it was not because he was[ ]n[o]t advised." On May 24, 2010, the trial court entered the sentencing order. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred in denying his motion to withdraw his guilty plea. Specifically, appellant asserts that the trial court's denial of his motion to withdraw his plea was an abuse of discretion that resulted in a manifest injustice since 1) his guilty plea was entered at a time when he was not mentally stable; and 2) he was not allowed to contest his guilt at trial by asserting the defense that he was not guilty of taking money for work that he had not done.

"[W]hether or not an accused should be allowed to withdraw a plea of guilty for the purpose of submitting one of not guilty is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949); see Justus v. Commonwealth, 274 Va. 143, 152, 645 S.E.2d 284, 288 (2007) (noting that although Parris was decided under the

- 6 -

former Rule 3A:25(d), which was codified in Code § 19.2-296 in 1975, it is still the applicable standard under the statutory provision). In addition, "[t]he court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones v. Commonwealth, 29 Va. App. 503, 512, 513 S.E.2d 431, 435 (1999). Furthermore, "[d]etermining whether a court erred in declining to allow withdrawal of a guilty plea 'requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he [or she] pleaded to the charge.'" Id. at 512, 513 S.E.2d at 436 (second and third alterations in original) (quoting Parris, 189 Va. at 322, 52 S.E.2d at 872).

Code § 19.2-296 provides,

> [a] motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

As noted by the Supreme Court in Justus,

> [u]nder the express terms of the statute, when the motion is made after entry of a final order imposing sentence or deferring the imposition of sentence, a defendant will be allowed to withdraw a guilty plea only while the case remains under the trial court's jurisdiction for twenty-one days and *only "to correct [a] manifest injustice."*

274 Va. at 152, 645 S.E.2d at 288 (second alteration in original) (emphasis added).

Thus, a court is permitted to grant a motion to withdraw a guilty plea after it has imposed the sentence only to correct a manifest injustice. "'The more severe standard is applied to avoid motions for withdrawal based on disappointment in the terms of the sentence . . . .'" Lilly v. Commonwealth, 218 Va. 960, 965, 243 S.E.2d 208, 211 (1978) (quoting Paradiso v. United States, 482 F.2d 409, 416 (1973)) (holding that no manifest injustice occurred where the reason

for the post-sentence motion to withdraw the guilty plea was based on a disappointment in the sentence imposed). "The term 'manifest' is defined as being 'synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, that which is clear and requires no proof; that which is notorious.'" Johnson v. Anis, __ Va. __, __, 731 S.E.2d 914, __ (2012) (quoting Black's Law Dictionary 962 (6th ed. 1990)).

Manifest injustice amounts to an obvious miscarriage of justice, such as an involuntary guilty plea or a plea based on a plea agreement that has been rescinded. Black's Law Dictionary 1048 (9th ed. 2009) (defining a "manifest injustice" as "[a] direct, obvious, and observable error in a trial court"); Scott v. Commonwealth, 58 Va. App. 35, 48-49, 707 S.E.2d 17, 24 (2011) ("'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010))). "In examining a case for miscarriage of justice," courts determine whether the record contains "affirmative evidence of innocence or lack of a criminal offense." Tooke v. Commonwealth, 47 Va. App. 759, 765, 627 S.E.2d 533, 536 (2006). In addition, "'a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Id. at 765, 627 S.E.2d at 536 (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989)).

While appellant in this case filed his motion to withdraw his guilty plea after the sentencing hearing on February 11, 2010 but prior to the sentencing order entered on May 24, 2010, appellant concedes on brief and at oral argument that the "manifest injustice" standard applies in the present case. At trial, appellant did not mention that he wanted to withdraw his guilty plea until after the trial court had pronounced his sentence at the sentencing hearing on February 11, 2010. Based on the timing of his motion, appellant's request to withdraw his plea appears to have been prompted by "disappointment in the sentence [imposed].'" Lilly, 218 Va.

at 965, 243 S.E.2d at 211 (alteration in original) (quoting Paradiso, 482 F.2d at 416). Furthermore, appellant did not object to the trial court's application of the manifest injustice standard when it denied appellant's motion to withdraw his guilty plea. Thus, the manifest injustice standard applies and "[t]he real question in this case . . . is whether, in the exercise of sound judicial discretion, the trial court should have granted the motion for withdrawal to correct some manifest injustice resulting from the circumstances . . . ." Id. at 963, 243 S.E.2d at 210-11.

In determining this question, the record does not support appellant's claim that the trial court abused its discretion. Appellant first asserts that he had an affirmative defense that would have resulted in dismissal of the case. This basis for withdrawal of a guilty plea, however, applies only before sentencing when a more liberal standard applies. See Justus, 274 Va. at 154, 645 S.E.2d at 289 ("Thus, the motion [to withdraw a guilty plea made prior to entry of a final sentencing order] should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case."). Accordingly, we decline to apply the pre-sentencing standard to appellant's post-sentencing motion as the more stringent "manifest injustice" standard applies. Id. at 153, 645 S.E.2d at 288 ("[L]ogic dictates that the standard [by which a trial court determines whether to grant a motion to withdraw a guilty plea made before a sentence is imposed] must be more liberal than the requirement of showing a manifest injustice.").

Appellant's second assertion, that the trial court erred in denying his motion to withdraw the guilty plea on the ground that appellant was not mentally stable, similarly falls short of satisfying the manifest injustice standard. When answering the trial court's questions during the extensive colloquy, appellant demonstrated to the trial court that he was competent to enter the guilty plea and that he was entering it knowingly, freely, and voluntarily. During the colloquy,

appellant indicated that he understood what a guilty plea pursuant to Alford was, that he was waiving certain rights, and that the plea was ultimately a guilty plea. Appellant's claims that he was mentally unstable, suicidal, and medicated at the time of entering the guilty plea were contrary to the evidence established during appellant's colloquy with the trial court and were unsupported conclusory allegations that the trial court did not find credible.

In examining the circumstances confronting appellant immediately prior to trial, Martin discussed the plea agreement and its effect on appellant's various rights with appellant. Appellant replied that he understood and that he still wanted to enter a guilty plea. Furthermore, contrary to appellant's assertion, Martin did not tell appellant that appellant could withdraw the guilty plea at any time, and Martin explicitly told appellant that the guilty plea pursuant to Alford was a guilty plea. In reaching its determination, the trial court specifically found Martin's testimony regarding the events credible and appellant's testimony that he did not understand due to mental health issues at that time incredible, and we are bound by this finding.

Moreover, the Commonwealth would have been prejudiced if the trial court had permitted appellant to withdraw his guilty plea since the victim's elderly mother would likely have been unavailable to testify at a new trial. See Hubbard v. Commonwealth, 60 Va. App. 200, 211 n.4, 725 S.E.2d 163, 168 n.4 (2012) (noting that a pre-sentencing motion to withdraw a guilty plea "may be appropriately denied where the record indicates that there has been some form of significant prejudice to the Commonwealth").

As appellant has not shown there was a manifest injustice to be corrected, this Court holds that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea, and we affirm.

Affirmed.