COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Russell, AtLee and Senior Judge Haley
Argued by videoconference


GHYSLAINE MENDEZ BELMONTE, S/K/A
  GHYSLAINE MENDEZ-BELMONTE
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0889-20-4                        JUDGE RICHARD Y. ATLEE, JR.
                                                          AUGUST 3, 2021
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                            Louise M. DiMatteo, Judge

            Arthur P. Pickett (The Pickett Law Group, PLLC, on brief), for
            appellant.

            Lauren C. Campbell, Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        Ghyslaine Mendez Belmonte appeals the judgment of the trial court denying her motion

to withdraw her guilty plea. Mendez Belmonte pled guilty, pursuant to a plea agreement, to

felony hit and run and misdemeanor driving on a suspended license. On appeal, Mendez

Belmonte argues that the trial court erred in denying her motion to withdraw her guilty plea. For

the reasons below, we find that the trial court did not err in denying her motion, and we affirm.

                                    I. BACKGROUND

        Mendez Belmonte was involved in a car accident on November 21, 2018. She was

charged with felony hit and run and driving on a suspended license, third offense. On September

19, 2019, she pled guilty pursuant to a plea agreement. Under the plea agreement, the charge of

driving suspended, third offense, was reduced to a misdemeanor, first offense. The plea

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

agreement did not contain an agreement or recommendation from the Commonwealth as to sentencing.

The trial court conducted a lengthy plea colloquy. Mendez Belmonte agreed that she had spoken with her attorney about the offenses, that she had discussed any possible defenses with her attorney, and that she had been promised nothing other than what was listed in the agreement. The trial court then explained the sentencing ranges for each offense. Mendez Belmonte acknowledged that she understood the possible sentences she faced and that no promises had been made to her as to what sentences the court would impose. The trial court also asked whether Mendez Belmonte was pleading guilty because she was guilty of the charged offenses, and Mendenz Belmonte answered, "Yes, Your Honor." Following the Commonwealth's proffer of evidence, the trial court accepted the plea agreement, ordered a presentence report, and set the case for sentencing. It entered conviction orders on October 4, 2019.

After two continuances, Mendez Belmonte was scheduled to be sentenced on February 28, 2020. Between the time she entered her plea and the sentencing hearing, Mendez Belmonte voluntarily completed over 100 hours of community service and raised money for restitution associated with the car accident. Based on these actions and the presentence report, both the Commonwealth and Mendez Belmonte asked the trial court to revoke her bond and continue sentencing to the trial court's next sentencing docket. The parties explained that the basis of the revocation was in furtherance of an agreement, which included an agreement to serve time, that would lead to a reduction of the felony hit and run charge.

Because Mendez Belmonte had already pled guilty and been found guilty pursuant to a plea agreement, the trial court questioned the parties about what was intended by this new agreement. Both parties agreed it was a modification of the original plea agreement. The trial

court then asked what the new agreement was going to say and questioned whether it was to be a new plea agreement or a recommendation as to sentencing. This time, the Commonwealth responded that "there's going to be a recommendation for what we'd like the [trial c]ourt to do." The trial court then advised that if this new agreement was a sentencing recommendation, that was "perfectly fine," but if it was intended to be a new plea agreement, the trial court needed to see the terms in writing, and, if accepted, a new plea colloquy was required. After some initial confusion, the Commonwealth's attorney explained that it was her understanding that the courts traditionally followed a recommendation. The trial court explained that sometimes courts did and sometimes they did not, before stating,

> If that's where you are and you're offering a recommendation to the Court, and you want her to serve some time in furtherance of that agreement – pardon me, that recommendation, that's fine and then we can put it off and then I will make the decision as to whether I will accept that or not.

Defense counsel responded, "Yes, that's where we are." The trial court allowed defense counsel a brief recess to speak with Mendez Belmonte, before ultimately continuing the case for two weeks to allow the parties to get everything prepared.

On March 13, 2020, the parties appeared before the trial court for sentencing. When the trial court asked defense counsel for argument on the disposition, defense counsel asked if the trial court had the updated plea agreement. The trial court answered, "I have a document that says it's a plea agreement. I've already accepted a plea from the Defendant . . . I consider [the document] a recommendation to the Court."[1]

---

[1] The new document recommended a suspended imposition of sentencing; Mendez Belmonte would be placed on supervised probation for two years, and if she complied with the terms and conditions of probation, she would be permitted to withdraw her guilty plea to the felony hit and run charge and plead guilty to a lesser misdemeanor hit and run charge.

- 3 -

After hearing from both parties on sentencing, the trial court commented that this was an "extremely unusual" situation, pointing to the fact that it had already accepted a plea agreement that reduced one of the charges and had entered convictions. Given that, the trial court explained that it was not appropriate to offer a new plea agreement, but that it would consider the document to be a sentencing recommendation. Ultimately, the trial court rejected the recommendation. It pointed to Mendez Belmonte's eleven misdemeanor convictions over the last nine years, a probation violation, and new marijuana charges filed during the pendency of the case. Given Mendez Belmonte's record, the trial court concluded that the "extraordinary dispensation" recommended was not appropriate. The trial court sentenced Mendez Belmonte to three years imprisonment with two years and six months suspended for the felony and twelve months, all suspended, for the misdemeanor. At the end of the hearing, defense counsel objected to the trial court's characterization of the document.

On May 12, 2020, Mendez Belmonte filed a motion to withdraw her guilty plea, arguing that she should be allowed to withdraw her plea to correct a manifest injustice. She argued that the trial court improperly characterized the second "agreement" as a recommendation, and she was not given a chance to withdraw her plea after the trial court made that determination. The Commonwealth made no argument.

The trial court found that Mendez Belmonte had entered the original plea agreement freely and voluntarily, and the agreement had been accepted by the court. It again concluded that the second "agreement" was a sentencing recommendation, which called for a "tremendous dispensation." The trial court concluded that there was no manifest injustice and denied the motion. Mendez Belmonte now appeals.

## II. ANALYSIS

We review the decision to deny a motion to withdraw a guilty plea "for an abuse of discretion based on the 'facts and circumstances of each case.'" Velazquez v. Commonwealth, 292 Va. 603, 612 (2016) (quoting Parris v. Commonwealth, 189 Va. 321, 324 (1949)).

"Under Virginia law, motions to withdraw a guilty plea are governed by two separate standards. The timing of the motion to withdraw determines which standard a court will apply to review the motion." Brown v. Commonwealth, 297 Va. 295, 299 (2019). Where, as here, the motion to withdraw is made *after* sentencing, we apply the manifest injustice standard found in Code § 19.2-296, which provides,

> [a] motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

"Manifest injustice is a 'more severe' standard and it applies post-sentencing 'to avoid motions for withdrawal based on disappointment in the terms of the sentence . . . .'" Brown, 297 Va. at 300 (alteration in original) (quoting Lilly v. Commonwealth, 219 Va. 960, 965 (1978)).

"The term 'manifest' is defined as being 'synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident.'" Velazquez, 292 Va. at 616 (quoting Johnson v. Anis, 284 Va. 462, 466 (2012)). "Manifest injustice amounts to an obvious miscarriage of justice, such as an involuntary guilty plea or a plea based on a plea agreement that has been rescinded." Howell v. Commonwealth, 60 Va. App. 737, 746 (2012). "'In examining a case for miscarriage of justice,' courts determine whether the record contains 'affirmative evidence of innocence or lack of a criminal offense.'" Id. at 746-47 (quoting Tooke v. Commonwealth, 47 Va. App. 759, 765 (2006)).

The record does not support Mendez Belmonte's claim that the trial court abused its discretion. She argues that a manifest injustice occurred because the trial court erroneously characterized her plea agreement as a sentencing recommendation.[2] But Mendez Belmonte's position ignores the fact that the trial court had already accepted a plea agreement, and her guilty plea, on September 19, 2019. Further, the trial court had entered convictions by order dated October 4, 2019. During the extensive plea colloquy, Mendez Belmonte affirmed she had had time to speak with counsel about possible defenses and whether she should plead guilty, she understood the possible sentences she faced, and she had not entered any other agreement or received any promises relating to the sentence. She also confirmed that she was pleading guilty freely and voluntarily and because she was guilty of the offenses charged. Nothing in the September 19, 2019 record contradicts her affirmations, and, likewise, nothing in the record amounts to "an obvious miscarriage of justice." Id. at 746.

We recognize that a defendant seeking to withdraw a guilty plea under Code § 19.2-296 "is necessarily seeking to repudiate the admission of guilt, and some, if not all, of the admissions made in the guilty plea colloquy." Velazquez, 292 Va. at 617. But in this case, Mendez Belmonte has not asserted her initial plea was involuntary or challenged the initial plea or plea colloquy in any way. See id. (considering the answers during the plea colloquy where defendant admitted his answers during the colloquy were true and was not claiming the plea was involuntary); Howell, 60 Va. App. at 747 (finding evidence established during plea colloquy contradicted appellant's claims he was mentally unstable). Nor does she make any claim of

---

[2] A plea agreement exists when the defendant agrees to enter a plea of guilty or *nolo contendere* and the Commonwealth agrees to "[m]ove for nolle prosequi or dismissal of other charges" or "[a]gree[s] that a specific sentence is the appropriate disposition of the case." Rule 3A:8(c)(1)(A), (C). A recommendation, however, is presented "with the understanding that such recommendation or request will not be binding on the court." Rule 3A:8(c)(1)(B).

innocence. Her only arguments relate to the trial court's characterization of the second "agreement."

Even there, we find nothing that meets the manifest injustice standard. Despite the confusion about whether the "agreement" was a plea agreement or a recommendation, the parties discussed the issue, and the consequences of each, at the February 28, 2020 hearing. Although initially agreeing it was a plea modification, the Commonwealth thereafter repeatedly referred to the proposed agreement as a recommendation, and the hearing concluded with the trial court stating,

> If that's where you are and you're offering a recommendation to the Court, and you want her to serve some time in furtherance of that agreement – pardon me, that recommendation, that's fine and then we can put it off and then I will make the decision as to whether I will accept that or not.

Mendez Belmonte's counsel agreed that that was where the parties stood. It should come as no surprise then, that the trial court concluded that the second agreement was a sentencing recommendation. Contrary to Mendez Belmonte's claim that the trial court changed the categorization of the agreement, it simply acted in accordance with the expressed intention of the parties.

The trial court found that she entered her guilty plea knowingly and voluntarily. It accepted the plea agreement on September 19, 2019, which it was bound to follow by Rule 3A:8(c)(3), and it entered conviction orders on both pleas. When a second "agreement" was discussed, the trial court inquired into the intent of the parties, who, after some confusion, *both* confirmed it was a sentencing recommendation. After attempting an oral recommendation, the parties agreed with the trial court that it should be made in writing. The second "agreement" was

presented to the trial court at the sentencing hearing. In light of these facts, the trial court concluded, and the Commonwealth agreed, that it was a sentencing recommendation.[3]

Mendez Belmonte contends that she did not withdraw her original guilty plea because she was under the assurance that a new plea agreement was in place. She argues that she could have withdrawn her plea prior to sentencing under a much less stringent standard.[4] But the trial court informed the parties it was treating the agreement as a recommendation prior to sentencing, and Mendez Belmonte made no attempt to withdraw her guilty plea at that time. Instead, her attorney argued why the disposition in the amended "agreement" was appropriate. It was not until May 12, 2020, nearly two months later, that Mendez Belmonte attempted to withdraw her plea.

Mendez Belmonte does not argue that she is innocent or that she has a defense to the crimes charged. Nor does she challenge the circumstances of her original plea agreement, where there was no agreed upon or recommended sentence. She argues only that the trial court should have accepted her second "agreement," where she negotiated a better deal. The higher manifest

---

[3] Mendez Belmonte argues a manifest injustice occurred because the trial court failed to provide the instruction required in Rule 3A:8(c)(2), which requires the trial court to instruct the defendant that "if the court does not accept the recommendation or request, [she] nevertheless has no right to withdraw h[er] plea unless the Commonwealth fails to perform its part of the agreement." We find this unpersuasive. Rule 3A:8(c)(2) contemplates a situation where a defendant pleads guilty pursuant to a deal with the Commonwealth, where the Commonwealth agrees to offer a sentencing recommendation. Here, Mendez Belmonte had already pled guilty in a separate agreement, and her agreement to plead guilty was not attached to the recommendation.

[4] "[A] defendant who moves to withdraw a guilty plea *before* sentencing need only show that [1] his motion was made in good faith and [2] premised upon a reasonable basis." Brown, 297 Va. at 299 (alterations in original) (quoting Velazquez, 292 Va. at 616). "A reasonable basis must include a proffer of evidence showing a reasonable basis for contesting guilt." Id. (quoting Cobbins v. Commonwealth, 53 Va. App. 28, 34 (2008)). Although Mendez Belmonte suggests she could have easily met this standard, she does not argue that she is innocent or otherwise raise issues relating to anything other than the categorization of the agreement. There is nothing in the record indicating a reasonable basis for contesting guilt.

injustice standard is intended to avoid motions for withdrawal based on "disappointment in the terms of the sentence." <u>Brown</u>, 297 Va. at 300. The record supports the trial court's finding that the "agreement" was intended as a sentencing recommendation. Thus, we find that facts and circumstances of this case do not justify a finding of manifest injustice.[5]

### III. CONCLUSION

Because we find that there was no manifest injustice, we conclude that the trial court did not err in denying Mendez Belmonte's motion to withdraw her guilty plea.

<u>Affirmed.</u>

---

[5] We do not attempt to discourage parties from further negotiations after a plea has been entered. Nor does our holding address the permissibility of plea modifications or new plea agreements. We hold only that, under these particular facts, the evidence does not demonstrate that a manifest injustice occurred.