COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Russell and Senior Judge Haley
Argued by videoconference


NICHOLAS DeLUCA, S/K/A
  NICHOLAS TYLER DeLUCA

v.        Record No. 1150-20-4

COMMONWEALTH OF VIRGINIA

                                                        OPINION BY
NICHOLAS DeLUCA                          JUDGE WESLEY G. RUSSELL, JR.
                                                     OCTOBER 26, 2021

v.        Record No. 1151-20-4

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Yancey Ellis (Carmichael Ellis & Brock, PLLC, on briefs), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


In this consolidated appeal,[1] Nicholas DeLuca argues the trial court erred in requiring his

defense counsel to testify during DeLuca's motion to withdraw his guilty pleas. He specifically

argues that, by doing so, the trial court deprived him of his right to counsel at a critical stage of

the proceedings. DeLuca also claims the trial court erred in denying his motion to withdraw his

guilty pleas prior to sentencing. We disagree with DeLuca and affirm the judgment of the trial

court.

---

[1] DeLuca filed two separate notices of appeal independently raising the issues we address
here. Because the facts and issues arise out of the same proceeding, this Court, by order dated
June 9, 2021, consolidated the appeals for purposes of briefing and argument.

BACKGROUND

DeLuca was indicted on six counts of taking indecent liberties with a child with whom he had a custodial or supervisory relationship in violation of Code § 18.2-370.1(A)(iii), and one count of using a communications system to solicit a child in violation of Code § 18.2-374.3(D). On March 2, 2020, DeLuca entered into a written plea agreement with the Commonwealth regarding the charges. Per its terms, DeLuca pled guilty to the charges and, among other stipulations, represented that he had "discussed with my attorney any registration consequences under the Sex Offender and Crimes Against Minors Registry Act pursuant to Virginia Code § 9.1-900 *et seq.*" and also affirmed that he "underst[ood] that as a consequence of this stipulation, my plea[s] will implicate a statutory duty to register under the Sex Offender and Crimes Against Minors Registry Act pursuant to Virginia Code . . . § 9.1-900 *et seq.*" The agreement was signed by DeLuca, his counsel, and the assistant Commonwealth's attorney prosecuting the case.

At the plea hearing, the trial court reviewed the agreement with DeLuca and conducted a standard plea colloquy. During the colloquy, DeLuca acknowledged that he had reviewed the written agreement with his attorney, signed it, and that he was pleading guilty freely, voluntarily, and with full understanding of the charges against him because he was guilty of the charged crimes. He confirmed that the pleas were not coerced by anyone, that he had discussed the possible punishments with his attorney, that he understood the potential sentence he faced, that it was his own decision to plead guilty, and that he was satisfied with his lawyer's services. The trial court accepted DeLuca's guilty pleas after finding that DeLuca entered them freely, intelligently, and voluntarily.

At the hearing, the prosecutor, without objection, proffered evidence regarding DeLuca's online contacts with, and eventual sexual abuse of, the victim, who was thirteen years old when

he first encountered DeLuca.  The child victim first met DeLuca online through an application called Discord, which facilitated the exchange of voice and text messages.  The Commonwealth introduced copies of text messages exchanged between DeLuca and the victim from March 2016 to January 2019, and proffered evidence that DeLuca requested, and the victim submitted to, various sexual activities, including anal intercourse.  The Commonwealth further proffered that between October 2017 and June 2018 the victim's parents were paying DeLuca to assist the victim with his online high school classes and his exams.  The victim's mother provided the police with spreadsheet invoices that DeLuca had produced documenting his hours of work with the victim, as well as copies of the checks she wrote to DeLuca for that work; the victim's parents paid DeLuca a total of $11,603.51 for 746 hours of work.

Having accepted the pleas and heard the evidence, the trial court convicted DeLuca of the offenses and ordered a psychosexual evaluation of DeLuca and a presentence report.  The sentencing hearing eventually was set for September 2020.

Prior to the sentencing hearing, DeLuca, by counsel, filed a motion to withdraw his guilty pleas, alleging that when he entered his pleas, he was "greatly mistaken about the consequences of his guilty pleas."  Specifically, he argued that he thought he would be "automatically removed from the sex offender registry after a period of ten years" when, in reality, his convictions would require him to be on the sex offender registry for the remainder of his life.

The trial court held a combined hearing on DeLuca's motion to withdraw his pleas and his sentencing on September 24, 2020.  Before hearing evidence on sentencing, the trial court allowed DeLuca to testify as to why he wished to withdraw his guilty pleas.  DeLuca stated he was "mistaken as to the effect" of the pleas because he believed he would need to register as a sex offender for only ten years and not for the remainder of his life.  He claimed that two prior attorneys and the retained counsel that represented him at the time of his pleas had provided

inaccurate information regarding his registration obligation. He also claimed to have "look[ed]" at books in the law library at the Alexandria Detention Center and conducted research on the internet that confirmed his mistaken belief that his registration obligation would last only ten years. He testified that his family also had done research that confirmed his mistaken view that the obligation would expire after ten years. In addition to his testimony regarding his registration obligation, DeLuca, who did not deny sending the messages to the victim, claimed that he was never the victim's "supervisor."

During cross-examination, the Commonwealth played a recording of a jailhouse phone call between DeLuca and his brother. During their conversation, DeLuca discussed his thoughts about seeking to withdraw his guilty pleas. DeLuca implied that the victim likely would not want to go forward with the case because "he's going to just want it gone and done and over with." When asked by the prosecution if he stated to his brother that the victim, now an adult, would not be interested in trying the case, DeLuca answered, "I do not believe I said exactly that." During the phone conversation from jail, DeLuca also expressed his preference to have a different judge sentence him.

The trial court then asked DeLuca if he had saved from his research "a single document which you've read that you can present to the [c]ourt in which you saw that there was a ten-year registration requirement?" Counsel interposed that no such document exists because it is a "completely mistaken fact."

In further support of DeLuca's motion, his counsel offered to proffer the conversation he had had with the prosecutor regarding DeLuca's motion to withdraw his pleas. The trial court indicated that it was not getting involved in the parties' settlement discussions. Counsel explained to the trial court, "That's what I'm asking, to present evidence." The trial court responded, "All right. Get up on the stand." The prosecutor observed, "I don't know that

- 4 -

[counsel] can testify in this hearing and be counsel in this hearing at the same time." DeLuca's counsel replied, "Well, there's no other way to do it[,]" to which the prosecutor suggested counsel withdraw from his representation of DeLuca. DeLuca's counsel responded that the Commonwealth's suggestion that he cease being counsel was not an "appropriate request."

The trial court then swore in DeLuca's counsel. The trial court opened the "questioning" by instructing DeLuca's counsel to "[s]ay what you want to say."

Counsel testified that he first learned of DeLuca's desire to withdraw his guilty pleas from the prosecutor, who had listened to DeLuca's phone recordings from jail wherein DeLuca stated that he planned to withdraw his pleas. In counsel's subsequent discussions with DeLuca, counsel learned of DeLuca's claim that he had misunderstood that the registration requirement would last for the remainder of his life. Counsel conceded that he did not "know whether I gave him that incorrect information[,]" but stated that he did not "think it originated with me." Counsel thought DeLuca had developed the misimpression through "faulty research" and bad advice from prior counsel. Counsel confirmed that DeLuca had asked him to verify his understanding and that counsel had failed to "verify it correctly." Later summarizing his testimony in argument, counsel stated "I don't think that he had . . . the right information on that, Your Honor. And I take responsibility for that."

In subsequent argument on the motion, counsel argued that DeLuca was not engaging in gamesmanship as the Commonwealth suggested, that he had presented a reasonable defense concerning the nature of his relationship with the victim, and that the Commonwealth would suffer no prejudice if DeLuca were allowed to withdraw his guilty pleas.

The trial court denied DeLuca's motion to withdraw his pleas, specifically rejecting the claimed factual basis underlying the motion. The trial court noted that at the guilty plea hearing DeLuca had attested that he understood the consequence of having to register as a sex offender

- 5 -

under Virginia law, which "explicitly set forth registration requirements that are far more rigid than the ten years that Mr. DeLuca would have the [c]ourt believe he learned from" other sources. The trial court found that when DeLuca entered his guilty pleas, he understood the consequences of having to register as a sex offender. The trial court found incredible DeLuca's claim that multiple separate sources each provided DeLuca with the exact same erroneous information, stating, "[i]t's amazing that those suggestions from independent sources would've been as consistent as Mr. DeLuca claims them to be, when, in fact, they were all wrong." When asked by the Commonwealth to make specific factual findings, the trial court responded by stating: "I think there's clearly prejudice to the Commonwealth because just the lapse of time and the failure of memory. I don't think that there's a showing of a good faith defense. And I don't think that he was mistaken under the terms of the plea[s]." Having rejected the motion, the trial court sentenced DeLuca consistent with his pleas.

This appeal followed. DeLuca first argues that the trial court "erred by requiring defense counsel to testify during [his] motion to withdraw his guilty plea[s]" because doing so "depriv[ed] him] of the right to counsel at a critical stage of the case." He also contends that the trial court "erred when it denied [his] motion to withdraw his guilty plea[s]."[2]

ANALYSIS

I. Standard of review

"The Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" Spence v. Commonwealth, 60 Va. App. 355, 369-70 (2012) (ellipsis in original) (quoting U.S. Const. amend. VI). As a result, DeLuca's argument that the trial court denied him

---

[2] DeLuca obtained new counsel to pursue the appeal.

- 6 -

his right to the assistance of counsel raises a constitutional question subject to *de novo* review in this Court. Huguely v. Commonwealth, 63 Va. App. 92, 106-07 (2014).

In contrast, we review DeLuca's second argument, that the trial court erred in denying his motion to withdraw his guilty pleas, for an abuse of discretion. Howell v. Commonwealth, 60 Va. App. 737, 745 (2012); see Parris v. Commonwealth, 189 Va. 321, 324 (1949). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Ramsey v. Commonwealth, 65 Va. App. 593, 599 (2015) (quoting Williams v. Commonwealth, 59 Va. App. 238, 246-47 (2011)). Accordingly, we may reverse a trial court's denial of the motion "only upon 'clear evidence that [the decision] was not judicially sound[.]'" Jefferson v. Commonwealth, 27 Va. App. 477, 488 (1998) (first alteration in original) (quoting Nat'l Linen Serv. v. Parker, 21 Va. App. 8, 19 (1995)). Finally, in conducting our review, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them . . . ." Branch v. Commonwealth, 60 Va. App. 540, 548 (2012) (ellipsis in original) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)).

## II. Deprivation of the right to counsel

As noted above, the Sixth Amendment to the United States Constitution entitled DeLuca to the "assistance of counsel" during the "criminal prosecution[]" underlying this appeal. U.S. Const. amend. VI. A "defendant's constitutional right to counsel attaches not only at the trial itself, but also at any critical stage where the 'substantial rights' of the accused may be affected." Browning v. Commonwealth, 19 Va. App. 295, 298 (1994). Because a hearing on a motion to withdraw a guilty plea is a "critical stage of the proceedings" to which the constitutional right to counsel attaches, id., the right applies here.

Relying heavily on our decision in Browning, DeLuca claims that, by "requiring" his counsel to testify at the hearing, the trial court denied him the assistance of counsel because his

counsel could not serve as both lawyer and witness at the same time. From this, he argues that he was "without the assistance of counsel, during a critical stage of the proceedings, i.e., the questioning of his defense counsel during his motion to withdraw his pleas." DeLuca's reliance on Browning is misplaced.

As DeLuca does here, the defendant in Browning sought to withdraw his previously made pleas. 19 Va. App. at 297. Unlike DeLuca, Browning also asked the trial court to remove his then counsel. Id. The trial court held one hearing on both motions, and "[a]fter hearing the reasons why [Browning] wanted [his lawyer] dismissed, the trial judge, *sua sponte*, called [the lawyer] as a witness." Id. The lawyer objected, arguing "that his client would be unrepresented if [the lawyer] testified." Id. at 299. The trial court overruled the objection and directed the lawyer to testify, leading the lawyer to testify over Browning's objection and against Browning's interests, which "effectively forced [Browning] to present his motion to substitute new counsel on his own." Id. at 298-99. Concluding that "when [Browning]'s counsel took the stand to testify as to matters *against his client's interests*, appellant was deprived of his right to counsel[,]" id. (emphasis added), we reversed the judgment of the trial court.

The differences between Browning and the instant case are significant. Here, although counsel would have preferred to proffer the information (presumably to avoid both being placed under oath and subjected to cross-examination), neither DeLuca nor his counsel objected to counsel testifying. In fact, it was DeLuca's counsel who stated that "there's no other way to do it" after the trial court had indicated that a proffer was unacceptable as evidence. Furthermore, neither DeLuca nor his counsel was seeking the removal of counsel. Thus, unlike Browning, DeLuca was not "forced to present his motion . . . on his own." Id. at 299. To the contrary, DeLuca's counsel continued serving as counsel throughout the proceeding, making argument on the motion after his stint on the witness stand.

Importantly, unlike the situation in Browning, DeLuca's counsel did not testify adversely to DeLuca. All of the testimony provided by DeLuca's counsel was consistent with DeLuca's position and testimony. Although indicating he did not believe he was the original source for DeLuca's claimed belief that his registration requirement would last only ten years, counsel testified that DeLuca told him that was DeLuca's understanding and that counsel did not disabuse DeLuca of that idea. In short, counsel took responsibility for the alleged misunderstanding.

That counsel's testimony was in support of DeLuca is significant; not only was any potential harm to DeLuca from the trial court's requiring counsel to testify diminished, but also destroyed any argument that DeLuca effectively was without counsel because his counsel's interests and testimony diverged from his own. As such divergence was central to our holding in Browning, it renders Browning inapposite here.

It is true that, in general, lawyers should not appear as witnesses in cases in which they are counsel. This general prohibition, colloquially referred to as the "lawyer-witness rule," is set out in Rule 3.7 of the Rules of Professional Conduct, which provides that "[a] lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness[.]" RPC 3.7(a). The general prohibition, however, is subject to certain exceptions, some of which are applicable to DeLuca's situation.

Specifically, RPC 3.7(a)(3) allows a lawyer to appear as both counsel and a witness in the same proceedings if "disqualification of the lawyer would work substantial hardship on the client." That is, in essence, the position DeLuca took in response to the Commonwealth's objection to counsel testifying and accompanying suggestion that DeLuca's counsel withdraw. Furthermore, RPC 3.7(b) provides that

> [i]f, after undertaking employment in contemplated or pending
> litigation, a lawyer learns or it is obvious that the lawyer may be

called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.

Because counsel's testimony was never "prejudicial" to DeLuca, counsel's appearance as both lawyer and witness at the hearing was not automatically prohibited by the lawyer-witness rule.[3]

Ultimately, DeLuca's challenge based on his claim of being deprived of counsel fails because he never was deprived of counsel. His counsel represented him at the hearing on the motion, argued the motions, and in no way undermined DeLuca's position with his testimony. His response to the open-ended question asked by the trial court allowed him to provide any and all information he would have offered via proffer, and the mere fact that he was under oath and subject to cross-examination did not prevent him from attempting to advance DeLuca's interests. As such, DeLuca's counsel was, at all times during the hearing, DeLuca's counsel both nominally and in fact. Accordingly, DeLuca's Sixth Amendment right to counsel was not violated.

### III.  Withdrawal of guilty pleas

Code § 19.2-296 provides, in pertinent part, that "[a] motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of a sentence is suspended[.]" The granting of such a presentencing motion, however, is not automatic. A

---

[3] In the comments to RPC 3.7, the drafters note that the circumstances in which a lawyer is adverse to his client is not the sole reason for the lawyer-witness rule. Specifically, Comment 2 to RPC 3.7 provides:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate witness should be taken as proof or as an analysis of the proof.

The Commonwealth's objection to counsel testifying thus may have been well founded, but that issue is not before us in this appeal.

motion to withdraw should be granted if the movant can establish the following:  (1) "the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or . . . it was induced by fraud, coercion or undue influence and would not otherwise have been made[,]" Parris, 189 Va. at 324; (2) "the evidence supporting the motion shows that there is a reasonable defense to be presented" to the charge, Justus v. Commonwealth, 274 Va. 143, 154 (2007); (3) granting the motion will not unduly prejudice the Commonwealth, Small v. Commonwealth, 292 Va. 292, 298 (2016); and (4) the motion to withdraw the plea was not filed "merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct by or on behalf of the defendant[,]" Hubbard v. Commonwealth, 60 Va. App. 200, 211 n.4 (2012). It is not enough for a defendant to merely assert these things, but rather, the assertions must be "sustained by proofs[.]"  Justus, 274 Va. at 153 (quoting Parris, 189 Va. at 325).

The trial court found that DeLuca failed to make the requisite showings.  Specifically, the trial court rejected DeLuca's contention that he was mistaken about the reporting obligation when he entered his pleas.  The trial court explained its conclusion in this regard, noting that it was unbelievable that four independent sources all provided DeLuca the exact same misinformation.

Implicit in the trial court's conclusion that DeLuca's stated reason for withdrawing the pleas was a lie is a finding that the motion to withdraw was not filed in good faith.  Such a conclusion not only is supported by DeLuca's prevarication, but also by the recording of the jailhouse phone call that was admitted into evidence at the hearing.  DeLuca's own words in that recording support a conclusion that he was seeking to withdraw his pleas because the victim, now an adult, might decide to let the matter drop and in hopes of manipulating the proceedings so his case would be heard before a different judge.

As noted above, we are bound by the trial court's findings related to the facts DeLuca was required to establish "unless [they are] 'plainly wrong' or without evidence to support them . . . ." Branch, 60 Va. App. at 548. Because the record supports the conclusions that, despite his claims at the hearing, DeLuca was not mistaken about his reporting obligation when he entered his pleas and that the motion to withdraw was filed in bad faith, the trial court did not err in refusing to allow DeLuca to withdraw his pleas.[4]

CONCLUSION

For the foregoing reasons, we conclude that the trial court did not deprive DeLuca of his right to counsel and did not err in refusing to allow DeLuca to withdraw his guilty pleas. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

---

[4] The trial court rejected DeLuca's motion for additional reasons, including the lack of a good-faith defense and potential prejudice to the Commonwealth. We do not address these alternative bases for the trial court's decision because addressing them is unnecessary to resolve DeLuca's appeal and we strive to resolve cases on the "best and narrowest grounds available." Delp v. Commonwealth, 72 Va. App. 227, 235 n.4 (2020) (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)).